## UNITED STATES COURT OF APPEAL
## FOR THE ELEVENTH CIRCUIT

_____

# Case No. 18-13181

_____


CHRISTIAN S. GHERARDI,

*Appellant,*

vs.

CITIGROUP GLOBAL MARKETS, INC.,

*Appellee.*


_____

On appeal from the United States District Court
for the Southern District of Florida, Miami Division
Case No. 18-20969-Civ-Ungaro/O'Sullivan

_____


## APPELLANT'S INITIAL BRIEF


Ethan A. Brecher
  (admitted pro hac vice)
Law Office of Ethan A. Brecher, LLC
600 Third Avenue, Second Floor
New York, NY 10016
Tel: 646-571-2440
Fax: 888-821-0246
ethan@ethanbrecherlaw.com

Jeffrey B. Crockett, Fla. Bar No. 347401
Scott A. Hiaasen, Fla. Bar No. 103318
Coffey Burlington, P.L.
2601 South Bayshore Drive, Penthouse
Miami, FL 33133
Tel:  305-858-2900
Fax:  305-858-5261
jcrockett@coffeyburlington.com
shiaasen@coffeyburlington.com
vmontejo@coffeyburlington.com
service@coffeyburlington.com


*Counsel for Appellant*

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

The following is a list of all judges, attorneys, persons, associations of persons, firms, partnerships, corporations and other legal entities that have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates and parent corporations, any publicly-held company that owns ten percent or more of a party's stock, and other identifiable entities related to a party:

Averett, Michael R.

Bender, Robert J.

Brecher, Ethan A.

Castro, Veronika

Citigroup Financial Products Inc.

Citigroup Global Markets Holdings Inc.

Citigroup Global Markets Inc.

Citigroup Inc.

Coe, Jack Martin

Coffey Burlington, P.L.

Coscarelli, Marcelo

Crockett, Jeffrey B.

Financial Industry Regulatory Authority

Freitas, Jose

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

Garcia, Hector

Gherardi, Christian S.

Gonzalez-Stawinski, Carlos

Guerrero, Antonio

Hiaasen, Scott A.

Huss, Louis David

Labrit, Suzanne Y.

Law Office of Ethan A. Brecher, LLC

Menendez, Jorge

Mondragon, Javier

Morales, Jessica

Morgan, Lewis & Bockius, LLP

Motta, Rodrigo

O'Sullivan, The Honorable John J.

Peraza, Eligio

Rabenau, Patrick

Rosenstein, Ira G.

Saragovi, Jessica

Shutts & Bowen LLP

Sirgado, Michael

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

Stabile, Daniel T.

Strutin, Ken

Sullivan, Stephen

Ungaro, The Honorable Ursula

Vasquez, Maria

Vincent, Alejandro

Wilson, Ricardo

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

## STATEMENT REGARDING ORAL ARGUMENT

This is an appeal from a final order by the district court vacating (in part) an arbitration award (the "Award") issued by a unanimous panel of three Financial Industry Regulatory Authority ("FINRA") arbitrators. The district court's rationale was that the arbitrators of the claim of Claimant-Appellant Christian S. Gherardi ("Gherardi") against Appellee Citigroup Global Markets, Inc. ("Citi") "exceeded their powers" under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(4). The district court's ruling, which is in direct tension with the abundant case law from this Court and others as to the limited scope of arbitral review, *e.g.*, *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572–73, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013); *Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. & Infrastructure, Inc.*, 837 F.3d 1083, 1087 (11th Cir. 2016), warrants oral argument. Appellant submits that oral argument addressing the record and the relevant legal principles would be beneficial to this Court's resolution of the case.

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ......................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT .............................................. i

TABLE OF CITATIONS ..................................................................... iv

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION........................................................................ viii

STATEMENT OF THE ISSUE....................................................................1

STATEMENT OF THE CASE.....................................................................1

   I.  COURSE OF PROCEEDINGS AND DISPOSITION BELOW ...................1

   II.  STATEMENT OF FACTS ....................................................3

STANDARD OF REVIEW ....................................................................11

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT ....................................................................14

   I.  THE ARBITRATORS DID NOT EXCEED THEIR POWERS
      IN DETERMINING ISSUES SUBMITTED TO THEM BY
      THE PARTIES ....................................................................14

      A.  The Narrow Scope of Review of Arbitral Awards...................................14

      B.  The District Court Misapplied the Governing Analysis by
          Overruling the Arbitrators' Interpretation of the Parties' Contract ........18

      C.  By Submitting Gherardi's Claims to the Arbitration Panel, Citi
          Waived Any Argument that the Panel Exceeded Its Powers .................25

   II.  THE AWARD IS SUPPORTED BY SEVERAL ARGUABLE
      INTERPRETATIONS OF THE PERTINENT CONTRACT .....................28

      A.  The Panel Arguably Could Have Found that Gherardi's
          Termination Violated the Contract's Anti-Retaliation Policy ...............30

      B.  The Arbitrators Could Have Arguably Found that Citi Modified
          the Agreement Through Its Conduct and Required Just Cause to
          Terminate Gherardi ....................................................................38

CONCLUSION ....................................................................43

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

CERTIFICATE OF COMPLIANCE ......................................................................44

CERTIFICATE OF SERVICE ...............................................................................44

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

# TABLE OF CITATIONS

Page(s)

Cases

*Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (United States),*
    862 F.3d 1284 (11th Cir. 2017) ...........................................................15

*BNSF R. Co. v. Alstom Transp., Inc.,*
    777 F.3d 785 (5th Cir. 2015) ..............................................................24

*Bonner v. City of Prichard, Ala.,*
    661 F.2d 1207 (11th Cir. 1981) ..........................................................26

*Cat Charter, LLC v. Schurtenberger,*
    646 F.3d 836 (11th Cir. 2011) .................................................. 22, 28

*City of Homestead v. Johnson,*
    760 So. 2d 80 (Fla. 2000)........................................................ 32, 33

*Countrywide Sec. Corp. v. Varga,*
    2009 WL 10674333 (C.D. Cal. Aug. 19, 2009) ................................14

*Davis v. Producers Agr. Ins. Co.,*
    762 F.3d 1276 (11th Cir. 2014) ..........................................................15

*Dean Witter Reynolds, Inc. v. Fleury,*
    138 F.3d 1339 (11th Cir. 1998) ............................................ 12, 25, 26

*DIRECTV, LLC v. Arndt,*
    546 F. App'x 836 (11th Cir. 2013)......................................................19

*Disa v. Ashley Furniture Indus., Inc.,*
    131 F. Supp. 3d 1316 (M.D. Fla. 2015).............................................32

*First State Ins. Co. v. Nat'l Cas. Co.,*
    781 F.3d 7 (1st Cir. 2015).................................................................19

*Fortune, Alsweet & Eldridge, Inc. v. Daniel,*
    724 F.2d 1355 (9th Cir. 1983) ..........................................................27

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*,
 377 F.3d 1164 (11th Cir. 2004) ............................................................28

*Frazier v. CitiFinancial Corp., LLC*,
 604 F.3d 1313 (11th Cir. 2010) .................................................... 17, 18

*Ganton Techs. Inc. v. UAW, Local 627*,
 358 F.3d 459 (7th Cir. 2004) ...............................................................27

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,
 439 F.3d 1286 (11th Cir. 2006) ..............................................................8

*Int'l Bhd. of Elec. Workers, Local Union 824 v. Verizon Fla., LLC*,
 803 F.3d 1241 (11th Cir. 2015) ...........................................................18

*Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*,
 898 F.3d 1087 (11th Cir. 2018) ...........................................................32

*Kel Homes, LLC v. Burris*,
 933 So. 2d 699 (Fla. 2nd Dist. Ct. App. 2006) ........................... 32, 33

*Lewis v. Circuit City Stores, Inc.*,
 500 F.3d 1140 (10th Cir. 2007) ...........................................................28

*Opals on Ice Lingerie v. Bodylines Inc.*,
 320 F.3d 362 (2d Cir. 2003)..................................................................27

*Original Appalachian Artworks, Inc. v. JAKKS Pac., Inc.*,
 718 F. App'x 776 (11th Cir. 2017)........................................................19

*Oxford Health Plans LLC v. Sutter*,
 569 U.S. 564, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013)........... passim

*PaineWebber, Inc. v. Agron*,
 49 F.3d 347 (8th Cir. 1995) ............................................. 4, 14, 20, 41

*Paladyne Corp. v. Weindruch*,
 867 So. 2d 630 (Fla. 5th Dist. Ct. App. 2004) ........................... 32, 33

*Raymond James Fin. Servs., Inc. v. Bishop*,
 596 F.3d 183 (4th Cir. 2010) ...................................................... 34, 35

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

*Reeves v. Sanderson Plumbing Prod., Inc.*,
530 U.S. 133 (2000)......................................................................................8

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*,
564 F.3d 81 (2d Cir. 2009).........................................................................19

*Rhodes v. BLP Assocs., Inc.*,
944 So. 2d 527 (Fla. 4th Dist. Ct. App. 2006).......................................13

*Rosensweig v. Morgan Stanley & Co.*,
494 F.3d 1328 (11th Cir. 2007) .............................................. passim

*Rostad & Rostad Corp. v. Inv. Mgmt. & Research, Inc.*,
923 F.2d 694 (9th Cir. 1991) ...................................................................17

*S. Commc'ns Servs., Inc. v. Thomas*,
720 F.3d 1352 (11th Cir. 2013) ............................................ 17, 19, 27

*Shearson Hayden Stone, Inc. v. Liang*,
653 F.2d 310 (7th Cir. 1981) .................................................. 4, 14, 20

*Sleit v. Ricoh Corp.*,
2008 WL 4826113 (M.D. Fla. Nov. 4, 2008).......................................37

*Spirit Airlines, Inc. v. Maizes*,
899 F.3d 1230 (11th Cir. 2018) ................................................. 32, 33

*St. Joe Corp. v. McIver*,
875 So. 2d 375 (Fla. 2004).......................................................... 13, 39

*Sterling Fin. Inv. Grp., Inc. v. Hammer*,
393 F.3d 1223 (11th Cir. 2004) ........................................................21

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)....................................................................... 35, 36

*Szuts v. Dean Witter Reynolds, Inc.*,
931 F.2d 830 (11th Cir. 1991) ..........................................................21

*THI of New Mexico at Vida Encantada, LLC v. Lovato*,
864 F.3d 1080 (10th Cir. 2017) ........................................................18

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. &*
*Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*,
807 F.3d 1258 (11th Cir. 2015) ............................................................28

*Walton v. Health Care Dist. of Palm Beach Cty.*,
862 So. 2d 852 (Fla. 4th Dist. Ct. App. 2003)....................................37

*White Springs Agric. Chemicals, Inc. v. Glawson Investments Corp.*,
660 F.3d 1277 (11th Cir. 2011) ..........................................................17

*Wiand v. Schneiderman*,
778 F.3d 917 (11th Cir. 2015) ......................................................3, 25

*Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. &*
*Infrastructure, Inc.*,
837 F.3d 1083 (11th Cir. 2016) ............................................... passim

Statutes

9 U.S.C. § 10................................................................................ passim

28 U.S.C. § 1291 ................................................................................ vii

28 U.S.C. § 1332................................................................................ vii

Rules

Fed. R. App. P. 4 ............................................................................... vii

Fed. R. App. P. 32 .............................................................................44

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

## STATEMENT OF SUBJECT
## MATTER AND APPELLATE JURISDICTION

Subject matter jurisdiction existed in diversity, 28 U.S.C. § 1332. Gherardi is a citizen of the State of Florida; Citi is a New York corporation; and, the amount in dispute exceeds the statutory amounts. This Court has jurisdiction because this is an appeal from a final judgment. 28 U.S.C. § 1291. An omnibus order and a separate final judgment filed by the District Court on July 26, 2018, (DEs 29, 30), disposed of all parties' claims. Gherardi's notice of appeal, filed on July 27, 2018, (DE 31), is timely as to all aspects of the omnibus order and the final judgment. Fed. R. App. P. 4(a)(4).

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

## STATEMENT OF THE ISSUE

Whether the district court erred in holding that the arbitrators exceeded their powers under § 10(a)(4) of the FAA in awarding Gherardi $3,452,000 on his claim for "wrongful termination," an issue the parties submitted to the arbitrators for decision.

## STATEMENT OF THE CASE

## I.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Gherardi was, for some twenty years, one of the top brokers for Citi in Miami, earning both seven-figure annual compensation and accolades for his impeccable performance and compliance record. (DE 17-18 at 7-8.) On December 11, 2015, Citi nonetheless terminated Gherardi for "cause," based on a decision by the firm's "formal disciplinary committee." (DE 17-18 at 23-31.)  In accordance with Citi's Employment Arbitration Policy (the "EAP"), (DE 17-3 at 10-15), set forth in its U.S. Employee Handbook January 2015 (the "Handbook"), and the FINRA Code of Arbitration Procedure for Industry Disputes (the "FINRA Code"), (DE 17-5), Gherardi commenced an arbitration challenging his termination and seeking as damages lost income resulting from Citi's actions.

During nine days of arbitration hearings, the arbitrators heard testimony from thirteen witnesses and received 53 exhibits into evidence.  The official hearing transcript is 1,728 pages long. (DEs 17-8 through 17-16.)  The parties presented oral

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

closing arguments on November 17, 2017, (DE 17-16 at 39-134), and submitted to the arbitrators extensive closing briefs on January 19, 2018. (DEs 17-18, 17-19.) The arbitrators issued their unanimous Award on February 28, 2018. (DE 1-1.) The arbitrators found in favor of Gherardi on his claim of "wrongful termination," awarding him $3,452,000 as damages; ruled that his termination should properly be described as "without cause" on his FINRA U-5 Form, and that the language Citi recorded on the U-5 Form (the "cause" being "business decorum issues") should be expunged; and, in addition, ordered the payment of $545,830.22 in earned but unpaid compensation. The Award was not a complete victory for Gherardi: damages were less than the amount he had sought, and the arbitrators rejected Gherardi's tort claims, including all claims against his supervisor, Michael Averett, individually. (DE 1-1.)

Gherardi timely filed a petition under § 9 of the FAA to confirm the Award in district court. (DE 1.) Citi filed a motion on March 29, 2018, to vacate the Award under the FAA, §§ 10(a)(2) and 10(a)(4), alleging "evident partiality" by one of the three arbitrators and that the arbitrators had "exceeded their powers" in making the Award for "wrongful termination." (DE 13.) After full briefing, (DEs 12, 13, 15, 17, 22), the district court's final order (DE 29) rejected Citi's arguments under the FAA § 10(a)(2) as to the arbitrator's alleged "evident partiality," and confirmed the Award in part, but granted Citi's motion under § 10(a)(4), and vacated the portion

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

of the Award that granted Gherardi damages for "wrongful termination." A judgment was entered on July 26, 2018. (DE 30.) This appeal timely followed on July 27, 2018, (DE 31), and Citi for its part filed a cross-appeal, (DE 33), which will presumably raise the arbitrator "evident partiality" issue.

## II.    STATEMENT OF FACTS

This matter arises from Citi's termination of Gherardi in December 2015, ending Gherardi's nineteen-year tenure as one of the most successful brokers in Citi's Miami office on what Gherardi alleged to be, and showed to be, pretextual and retaliatory grounds.[1]   (DE 17-18 at 7.)   Following an "investigation" by Citi's "formal disciplinary committee" that, in Gherardi's view, was profoundly flawed and a pretext to prevent him from taking his business elsewhere, Gherardi was fired "for cause" the day after he announced his intent to pursue internal challenges to the validity of a "warning" issued by Citi.  (DE 17-18 at 33-37.)

In March 2016, Gherardi initiated a FINRA arbitration in which he asserted claims for wrongful termination, breach of contract, defamation and tortious interference. (DE 12-1 at 9-21.)  On the claim for "wrongful termination," the issues were presented to the arbitrators for decision in the Statement of Claim, (*id.*), Citi's

---

[1] Because Gherardi was the prevailing party in arbitration, the facts are stated in the light most favorable to him in the case of any disputes.  In any event, "[w]hen reviewing an arbitration award … [the Court] may revisit neither the legal merits of the award nor the factual determinations upon which it relies."  *Wiand v. Schneiderman*, 778 F.3d 917, 926 (11th Cir. 2015).

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

Answer, (DE 12-1 at 29-40), closing arguments (DE 17-16 at 39-134), and the briefs the parties filed with the arbitrators after the close of evidence. (DEs 17-18, 17-19.) The claims relating to "wrongful termination" were based on (a) allegations that Citi's termination was in retaliation for Gherardi's invocation of the firm's internal arbitration procedure to challenge an improvidently issued "final warning," in violation of the contractual anti-retaliation clause in Citi's arbitration contract, and (b) there was no just cause for his pretextual and wrongful termination. Among other arguments, Gherardi relied on circuit court precedent holding that arbitrators have the power to determine whether a broker was terminated for cause – even where the broker was an "at-will" employee. *See PaineWebber, Inc. v. Agron*, 49 F.3d 347, 352 (8th Cir. 1995), and *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312–13 (7th Cir. 1981). (DE 17-18 at 49.)

Citi agreed to submit these claims to a determination by the arbitrators by the submission agreement it executed and filed with FINRA in August 2016. (DE 17-7.) Moreover, the parties tried and submitted those claims for resolution by their arguments throughout the arbitration, including by arguing their merits in their closing briefs. (DEs 17-18, 17-19.)

During the arbitration, Gherardi presented evidence that after an Office of the Comptroller of the Currency (OCC) regulatory moratorium on the opening of new accounts was imposed on Citi in 2015, Citi grew concerned that other firms would

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

entice Gherardi to leave and take his clients with him. (DE 17-18 at 33-37.) Rather than risk Gherardi leaving for a competitor with his 500-600 clients, Citi decided to fire Gherardi and falsely claim that it was for "cause" to make him unemployable at a competitor. Gherardi alleged that Citi hatched a scheme to terminate Gherardi to keep his $200,000,000 of client assets at Citi, redistributing his accounts to lower-paid brokers (thus brightening Citi's bottom line), while tarnishing Gherardi's name with a false U-5 Form indicating a termination for "cause" based on "business decorum issues," to prevent him as a practical matter from taking his customers to a competing brokerage firm of the same caliber.[2] Ultimately, Gherardi was fired; he in fact suffered millions of dollars of lost income; and, was unable to obtain a position at a comparable brokerage; while Citi kept the vast majority of Gherardi's customers and assigned the clients to junior, lower-commissioned brokers.

There was abundant evidence that the termination was wrongful and retaliatory. The termination, **in form**, followed Citi's practice and policy (as admitted by Averett, Gherardi's supervisor, at the hearing, (DE 17-18 at 24)) that Citi ***never*** fired one of its professionals without "cause." Thus, Citi purported to follow the required steps and procedures needed for a termination for "cause,"

---

[2]  *Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1330 (11th Cir. 2007) ("When a firm terminates a registered securities broker, the firm must submit a form called a "Form U-5" setting forth the reasons for the termination to the "Central Registration Depository," where regulatory authorities can access the information.").

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

including allegedly basing the termination on Gherardi's violation of a written "final warning," obtaining approval for the firing from the firm's "formal disciplinary committee," (DE 17-19 at 17-18), and filing a U-5 Form claiming "cause" for his termination. (DE 17-18 at 30.)

The arbitrators ultimately rejected Citi's pretextual grounds and found that the termination was wrongful rather than justified, retaliatory, and without just "cause." (DE 1-1.)[3]   Abundant evidence at the hearing supported their conclusion that the alleged "business decorum issues" were pretextual.  Citi relied on two wholly benign conversations between Gherardi and two other brokers at Citi who, in Gherardi's reasonable view, had poached his clients, in violation of Citi's anti-poaching policy. In a business where payment is based on commissions attached to "production," such issues cannot be unexpected.  There was evidence that Gherardi's interactions with the other Citi brokers in question – Rodrigo Motta ("Motta") and Jorge Menendez ("Menendez") – and with the client whom Menendez poached – Jose Freitas ("Freitas") – were each professional and appropriate.  (*See*, *e.g.*, DE 17-18 at 8-23.)[4]

---

[3]  Because the arbitrators did not make specific findings, on this appeal the court presumes (under the "any arguable" basis standard) that the arbitrators found for Gherardi on every basis presented.  Even if one of the bases was adopted, however, the result would be the same.

[4]  Contrary to what Menendez told Citi, Freitas testified that Gherardi acted professionally with him at all times, and indeed would not have invested $200,000 with him a few weeks after the alleged incident if Gherardi had acted unprofessionally.  Citi did not cross-examine Freitas.  Also, Citi was aware of

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

Nevertheless, in an *ex parte* proceeding in which Gherardi was neither present nor represented, nor given the chance to provide rebuttal evidence, Citi's "formal disciplinary committee" approved his termination, rejecting the overwhelming evidence that Gherardi did nothing wrong in either situation and, moreover, gave consideration to unfounded rumors of "threats," "violence," and gun ownership presented to the committee by a human resources officer named Maria Vasquez ("Vasquez"), apparently to poison its view of Gherardi. (DE 17-18 at 23-30.) Incredibly, Citi *admitted* at the arbitration that it knew before the "formal disciplinary committee" was even convened that a rumor of "domestic violence" concerning Gherardi was baseless, (DE 17-18 at 27-28), yet Vasquez claimed she nonetheless presented it to the disciplinary committee, which, according to her, requested an investigation (she said that the investigation turned up nothing).[5]

_____

Freitas's version of what happened almost immediately after the alleged incident occurred, yet chose to ignore it. (DE 17-18 at 19-23.)

[5] In its closing brief, Citi claimed that Vasquez presented the information about the "domestic incident" as a "data point" for the "formal disciplinary committee." (DE 17-19 at 17 n.7.) Yet, the same attorney who signed that brief on Citi's behalf represented to the arbitrators on the fifth day of the hearing that the "domestic incident" was *not* discussed with the disciplinary committee because it was an unsubstantiated rumor and it would have been prejudicial to Gherardi had it been presented to the committee. (DE 17-18 at 25.) Averett, for his part, denied that the "domestic incident," which he called "bullshit," was presented to the disciplinary committee. (DE 17-18 at 25.) Averett's superior, Marcelo Coscarelli ("Coscarelli"), testified that he, Averett, and Vasquez had determined several months before the "formal disciplinary committee" met that the "domestic" incident was an unproven rumor. (DE 17-18 at 28.) The arbitrators were thus entitled to conclude – based on

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

(DE 17-14 at 11-12, 69-71; DE 17-18 at 26.) The reality, as presented by Gherardi and confirmed by Gherardi's long-time supervisor at Citi, was that Gherardi was professional, impeccable, and commendable in his conduct, (DE 17-18 at 6), and a victim of a conspiracy to steal his business while trashing his good name.

The evidence also established that, in violation of Citi's contractual anti-retaliation clause, Gherardi was fired in retaliation for his having invoked his right to arbitrate the "final warning" relating to the Motta incident. Significantly, Gherardi was terminated just twenty-four hours after he advised Citi that he intended to arbitrate the "final warning" under the EAP, thus establishing a compelling causal connection.[6]   (DE 17-18 at 17-19.) Beyond the conspicuous timing of his

---

Averett's testimony, counsel's representation that the "domestic incident" was *not* presented to the "formal disciplinary committee," and Vasquez's diametrically contrary testimony which Citi's counsel parroted in his brief – that Citi lied about its purported justification for the termination in order to cover up the wrongful reason. Citi made no effort to reconcile its alternating versions of what happened, which exacerbated and magnified its blatant dissembling regarding the circumstances surrounding Gherardi's termination. *See*, *e.g.*, *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive… .   In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'").

[6] Mere temporal proximity can establish the causal basis for retaliation, so long as the link is very close, as here. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006).

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

termination, the evidence on this point also included Vasquez's *admission* that Gherardi was fired, rather than suspended, because he disputed Citi's criticism of the Motta incident.  (DE 17-18 at 16.)

In support of his "wrongful termination" claim, Gherardi raised several arguments over the course of the arbitration.  First, he argued that Citi terminated him in violation of the EAP's anti-retaliation clause for pursuing an appeal of the "final warning" arising from the Motta incident, resulting in his wrongful termination.  (DE 17-18 at 16-18, 47-48.)  Significantly, Citi in its own post-trial brief supported this argument, asserting that Gherardi's internal appeal was part and parcel of a failure to take responsibility and admit "wrongdoing" for his actions. (DE 17-19 at 13-14.)

Second, apart from the retaliation argument, Gherardi argued that the stated basis for his termination ("business decorum issues" relating to the Motta and Menendez/Freitas incidents) was pretextual, unsupported, and intended to cover up Citi's scheme to retain his clients following the regulatory moratorium. Gherardi contended that Citi's argument that no "cause" was needed was baseless under the parties' contract as modified by their conduct.  Gherardi argued that the "final warning" issued in relation to the Motta incident, which was in the process of being appealed when he was terminated, was without basis, and thus the termination itself, which was expressly based on the validity of the "final warning," was wrongful.

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

(DE 17-18 at 48-49.)  The arbitrators agreed.  Moreover, Gherardi argued that the finding of "cause" for termination was unsupported, phony, and pretextual, citing the testimony of Citi's key witness as to the policy that brokers were never fired without "cause."  (DE 17-18 at 23-37, 47-48.)

Citi's own post-trial brief, (DE 17-19), addressed the same issues.  Contrary to its position in its motion to vacate, Citi ***never argued*** at arbitration that the arbitrators would "exceed their powers" by ruling on the issues raised by Gherardi. Instead, Citi simply addressed the factual and legal merits of the dispute, which were plainly submitted to the arbitrators for decision. (*Id.*) Citi also did not deny that a termination in retaliation for Gherardi's pursuit of internal remedies violated the Citi contract, (*id.* at 24-25); rather, Citi argued that as a matter of fact Gherardi "was not terminated in retaliation for using the DRP [Dispute Resolution Procedure] process." (DE 17-19 at 24-25.)  The arbitrators came to the opposite factual conclusion, which was supported (among other things) by the argument Citi made **in the same brief** that Gherardi's pursuit of Citi's internal dispute resolution policy was proof of his failure to accept responsibility, justifying his termination.  (*Id.* at 13-14.)  In any case, the issue of whether Gherardi's termination was "wrongful" and a violation of the anti-retaliation provision of the Citi employment contract was clearly submitted to the arbitrators **by both parties**.

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

Citi similarly argued that while Gherardi was an "at-will" employee, Gherardi's termination for "cause" was fully justified on the basis stated by the "formal disciplinary committee."   Citi argued that under its contract "he could be terminated at any time **for any lawful reason**." (*Id.* at 7 ¶ 11, emphasis added.) Citi presented its own version of events, in which Gherardi had allegedly engaged in inappropriate and "unwelcomed" conduct on two occasions.  To quote Citi's brief: "Citi acted reasonably and appropriately at all times in addressing Claimant's unprofessional conduct, terminating his employment based on that conduct, and truthfully reporting the reasons for his termination as FINRA requires." (*Id.* at 22.) Citi defended the decision of the "formal disciplinary committee," (*id.* at 17-18), even though its deliberations were akin to a "star-chamber": they were *ex-parte*, secret, unrecorded and conducted with no input, knowledge, or attendance from Gherardi.   The **authority** of the arbitration panel to consider these issues, however, was never disputed by Citi at any time during the arbitration.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's vacatur of an arbitration award under FAA § 10(a)(4). *Wiregrass*, 837 F.3d at 1087.

## SUMMARY OF THE ARGUMENT

The sole basis cited by the district court for vacating the Award's damages for "wrongful termination" is that the arbitrators exceeded their powers, which requires

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

a finding that the arbitrators were not even attempting to resolve the issues submitted to them, but were acting on whim and caprice. *See*, *e.g.*, *Sutter*, 569 U.S. at 572-73, and *Wiregrass*, 837 F.3d at 1087. Given that an arbitration panel is not required to explain its decisions, and given the "strong presumption" under the law that the arbitrators acted within their powers, this is an almost impossible standard to meet. The district court's express disagreement with the apparent legal reasoning of the arbitrators (while failing to even address some of the "arguable bases" for the Award) falls far short of the legal showing required to vacate an award under § 10(a)(4).

**First**, it is undisputed that the issues and defenses with respect to wrongful termination *vel non* were clearly presented to the arbitrators by both Gherardi **and Citi** in both arbitration pleadings, Citi's submission agreement, and the parties' post-hearing briefs and closing arguments to the arbitrators.  Thus, the district court erred in finding that the arbitrators "exceeded their powers" in doing the very job the parties asked them to do.  *See Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342-43 (11th Cir. 1998).  Moreover, Citi's failure to argue that the panel did not have the power to hear Gherardi's wrongful termination claim was both an acknowledgement that the issue had been properly submitted to the arbitrators (as the submission agreement itself makes clear) and a waiver of their new argument that the panel "exceeded its powers."

12

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

**Second**, the Award should have been confirmed in light of the clear record showing that the arbitrators were "arguably" (or even clearly) interpreting the contract they were asked to apply. The arbitrators were asked to, and did, properly construe the contractual anti-retaliation clause as imposing a limitation on Citi's right to terminate Gherardi. The Award for "wrongful termination" drew its essence from the express "anti-retaliation" provision in the very contract that Citi alone drafted.

An abundance of legal authority supported the arbitrators' contract interpretation that a "cause" finding was necessary for termination in these circumstances. In addition, the issue of whether a claim for wrongful termination existed at all despite the "at-will" provision in the contract was open to interpretation based on Citi's course of conduct, including its corporate culture of not firing employees without "cause," and its reliance on a "formal disciplinary committee" to approve Gherardi's termination. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 382 (Fla. 2004) ("Under Florida law, the parties' subsequent conduct also can modify the terms in a contract"); *Rhodes v. BLP Assocs., Inc.*, 944 So. 2d 527, 530-31 (Fla. 4th Dist. Ct. App. 2006). There was ample basis for the arbitrators to conclude that just cause was lacking for Gherardi's pretextual and wrongfully motivated termination.

The arbitrators' ruling was also supported by circuit authority to the effect that FINRA arbitrators always have the power to review the propriety of a broker's

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

termination.  *See Agron*, 49 F.3d at 352; *Liang*, 653 F.2d at 312-13; *Rosensweig*, 494 F.3d at 1334; *see also Countrywide Sec. Corp. v. Varga*, 2009 WL 10674333, at *6 (C.D. Cal. Aug. 19, 2009).  The district court exceeded the scope of its review in determining that the *Agron* and *Liang* line of authority was not sufficiently "persuasive"; the resolution of any split in FINRA-related case law was a question for the arbitrators, not for the court.  The district court's decision at issue on this appeal should be reversed with directions to confirm the Award in Gherardi's favor in full.

## ARGUMENT

## I.    THE ARBITRATORS DID NOT EXCEED THEIR POWERS IN DETERMINING ISSUES SUBMITTED TO THEM BY THE PARTIES

### A.    The Narrow Scope of Review of Arbitral Awards

"Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances.  That limited judicial review, we have explained, maintain[s] arbitration's essential virtue of resolving disputes straightaway.  If parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process." *Sutter*, 569 U.S. at 568-69 (internal citations and quotations omitted).

Accordingly, "[b]ecause arbitration is an alternative to litigation, judicial review of arbitration decisions is 'among the narrowest known to the law.'"

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

*Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (United States)*, 862 F.3d 1284, 1286 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 654 (2018).  Moreover, "[t]here is a presumption in the FAA in favor of confirmation of arbitrators' awards; they will be vacated only in certain narrow circumstances defined in the statute." *Davis v. Producers Agr. Ins. Co.*, 762 F.3d 1276, 1283 (11th Cir. 2014).

Here, Citi "invokes § 10(a)(4) of the Act, which authorizes a federal court to set aside an arbitral award where the arbitrator exceeded his powers. A party seeking relief under that provision bears a heavy burden. It is not enough ... to show that the arbitrator committed an error—or even a serious error.  Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.  Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination.  So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Sutter*, 569 U.S. at 569 (internal citations and quotations omitted).  "All we say is that convincing a court of an arbitrator's error—even his grave error—is not enough. So long as the arbitrator was arguably construing the

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

contract—which this one was—a court may not correct his mistakes under § 10(a)(4)." *Id.* at 572 (internal citations and quotations omitted).

As this Court held in *Wiregrass*: "In determining whether an arbitrator has exceeded her broad authority, two principles guide us.  The first is that we must defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong we think that interpretation is." *Wiregrass*, 837 F.3d at 1087.  Second, while an arbitrator "may not issue an award that contradicts the express language of the agreement" and the "arbitrator acts within her authority when she even arguably interprets a contract, and she exceeds her authority when she modifies the contract's clear and unambiguous terms." *Id.* at 1088.  The threshold issue is whether the contract is "open to interpretation," or if "there are two plausible interpretations of an agreement." *Id.* (internal citations and quotations omitted).

Significantly, "when it is not apparent from the arbitrator's stated reasoning (or lack thereof) whether she permissibly interpreted a collective bargaining agreement or impermissibly modified it, and **one can plausibly read the award either way, the court must resolve the ambiguity by finding that the award is an interpretation of the contract and enforcing it**.  The rule reflects a strong, albeit not irrebuttable, presumption that the arbitrator has interpreted the agreement instead of modifying it." *Id.* at 1091–92 (emphasis added; internal citations and quotations omitted).

16

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

"[N]either an incorrect legal conclusion, nor a manifest disregard of the law," *constitute* grounds for vacating or modifying an arbitration award in this Circuit. *S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352, 1360 (11th Cir. 2013) (internal citations and quotations omitted); *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1323–24 (11th Cir. 2010). *See also White Springs Agric. Chemicals, Inc. v. Glawson Investments Corp.*, 660 F.3d 1277, 1281 (11th Cir. 2011).

Citi's argument for vacating the Award under § 10(a)(4) of the FAA "is a kind of man bites dog case in that a brokerage firm attacks an arbitration award. Having enthusiastically welcomed the enforcement of agreements to arbitrate, the securities industry might be expected not to encourage retrial of a case in a federal court. But when a broker loses an arbitration it is hard for the disappointed litigant to realize that the rules now permit only a restricted review of what arbitrators have decided. Deference to arbitrators is the rule." *Rostad & Rostad Corp. v. Inv. Mgmt. & Research, Inc.*, 923 F.2d 694, 697 (9th Cir. 1991). Citi's strategy is also what this Court explained in *Wiregrass* is impermissible: "We have lamented the fact that, all too often, parties try[] to convert arbitration losses into court victories." *Wiregrass*, 837 F.3d at 1092-93.

17

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

**B.    The District Court Misapplied the Governing Analysis by Overruling the Arbitrators' Interpretation of the Parties' Contract**

While the district court appeared to recognize in its omnibus order that an award does not exceed the power of arbitrators if it was "even arguably" a good faith interpretation of the parties' agreement, (DE 29 at 19-21), the district court strayed far from this standard in analyzing the arbitrators' Award. (*Id.* at 21-29.) The correct, deferential analysis leads to a near-inevitable confirmation of the Award, as numerous courts from this and other circuits have held in cases on similar footing.

First, it is well established that where the issues decided were submitted to the arbitrators by the parties as issues to be arbitrated – as was the case here – the arbitrators necessarily did not exceed their powers. *Frazier*, 604 F.3d at 1321–22 (confirming award giving Citi equitable relief which was not listed as available in contract because the issue was presented to the arbitrator by Citi for resolution);[7] *Int'l Bhd. of Elec. Workers, Local Union 824 v. Verizon Fla., LLC*, 803 F.3d 1241, 1246–47 (11th Cir. 2015) (arbitrator does not exceed his powers in resolving issues submitted to him by disputants); *THI of New Mexico at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1087 (10th Cir. 2017) (parties who submit issues to

---

[7] It is notable in our view that Citi was the beneficiary in the *Frazier* case of the submission argument that is now fatal to its position.

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

arbitration are presumed to agree that everything necessary to render decision is included in the authority of the arbitrators).

Second, if the Award could conceivably be viewed as addressing the governing contract, the Award will be confirmed even if the reviewing court finds it wholly devoid of either legal or factual support. *E.g.*, *Wiregrass*, *supra*, 837 F.3d at 1083, 1087-88; *S. Commc'ns Servs.*, 720 F.3d at 1360 (arbitral decision even arguably construing contract must stand even if "done badly," or "ugly"); *Original Appalachian Artworks, Inc. v. JAKKS Pac., Inc.*, 718 F. App'x 776, 784 (11th Cir. 2017) (same; when contract is "arguably" consistent with arbitral ruling, award must be confirmed); *DIRECTV, LLC v. Arndt*, 546 F. App'x 836, 840–41 (11th Cir. 2013) (same; where arbitrator considered text of contract, court's view of arbitral construction is irrelevant); *First State Ins. Co. v. Nat'l Cas. Co.*, 781 F.3d 7, 10–11 (1st Cir. 2015) (arbitrator's resolution of parties' dueling arguments about meaning of contract could not be reviewed by court even if non-prevailing party contended result was "plucked out of thin air" and "not derived from any contract term"); *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86, 88 (2d Cir. 2009) (award of fees by arbitrator upheld despite language of contract providing that each party would bear its own fees; court will uphold a challenged award as long as a "barely colorable" justification for the decision exists).

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

The district court analysis in this case was far less deferential than the law requires. In its analysis, (DE 29 at 21-29), the district court in effect vacated the Award based on its disagreement with the proffered legal bases for the Award. The district court embarked on its own interpretation of the parties' contract to conclude that the agreement unambiguously provided that Gherardi was an "at-will" employee who could be fired for any or all reasons at any time. From this conclusion, the district court (as if considering a motion for summary judgment in an employment case) ruled that it did not matter that (1) there was evidence that Gherardi was terminated in violation of the contract's anti-retaliation provision for an appeal he was taking of an earlier adverse action "warning"; (2) Citi purported to fire Gherardi "for cause" – not as an "at-will" employee; and, (3) two circuit court rulings presented to the arbitrators held in identical situations that "cause" is necessary for the termination of registered representatives under industry practice.[8] The district court plainly should not have ignored all these legitimate **arguable** bases for the Award.

---

[8] *Agron*, 49 F.3d at 352 (even where there is an at-will employment relationship, the reliance on arbitration to determine employment disputes creates an inherent "cause" standard that governs the employment relationship); *Liang*, 653 F.2d at 312 ("It has been held repeatedly that an agreement to arbitrate disputes about employee discharges implies a requirement that discharges be only for 'just cause.'"). No Eleventh Circuit case has ever addressed this issue and the arbitrators were left to construe and apply the applicable law.

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

To be sure, Gherardi agrees that arbitral rulings that disregard the "rules of the game" as unambiguously set forth in the governing contract will be vacated. *See*, *e.g.*, *Sterling Fin. Inv. Grp., Inc. v. Hammer*, 393 F.3d 1223, 1225 (11th Cir. 2004) (venue required to be in Florida, but arbitration proceeded in Texas); *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991) (three arbitrators required, but award was rendered by two arbitrators). This only occurs, however, when the issue is not open to interpretation or argument, *Wiregrass*, *supra*, which is plainly not the case here.

In addition to (1) ignoring the fact that the issues resolved by the arbitrators were submitted to them by the parties without objection from Citi (which alone should have been dispositive), and (2) discarding the proper deferential standard of review by substituting its own view of the parties' contract for that of the arbitration panel (which was free to consider, for example, harmonization of multiple contractual clauses, alleged modification by conduct, evidence of custom or practice, and countervailing legal principles), the district court was also wrong to criticize the arbitrators for not providing a detailed justification for their Award. (DE 29 at 20 ("the award provides essentially no reasoning for why it granted Gherardi's claim for wrongful termination").) It is well established that "an arbitrator need not explain her decision; thus, in a typical arbitration where no specific form of award is requested, arbitrators may provide a 'standard award' and simply announce a result."

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

*Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011). In this "standard" situation, the Award must be confirmed if there is any conceivable, "colorable," or "arguable" reason to believe that the basis for the Award drew its essence from the contract, or was based on an effort to interpret or apply the contract. In this case, that standard was met, as shown by the positions of the parties in their arbitration pleadings and the parties' post-trial briefing.

The district court's missteps are further illustrated by its surprising comment that "**other than Gherardi's arguments**" there was "nothing in the record to support a view that the Panel permissibly interpreted the Employment Documents." (DE 29 at 29.) Gherardi's arguments to the arbitrators on contract interpretation must be presumed to have supported the Award in a "permissible" fashion. Instead, the district court improperly considered the legal arguments presented by Gherardi at the arbitration on their merits, and rejected them, concluding that the legal authority cited by Citi was more "persuasive" than the authority presented by Gherardi. *Id.* at 27. In short, the district court reviewed the Award for legal error, which the law does not tolerate in this context.

While each of the district court's various legal rulings could be challenged individually, the dispositive issue is that the district court failed to recognize that those issues, and indeed the entire record, showed that the contract was **open to interpretation**. A proper analysis, for example, would have recognized that

22

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

protection against retaliation for exercising appeal rights (as provided for in the Citi contract, (DE 17-3 at 11)) creates (at a minimum) an arguable exception to "at-will" employment. (Indeed, the district court's contrary view would immunize adverse employment actions against whistleblowers or based on discrimination for all at-will employees, which is clearly not the law).

Moreover, the district court should have realized that, while the "at-will" language may have given Citi the right to close an office or lay off employees in an economic downturn without a showing of "cause," it did not necessarily mean that arbitrators could not examine the fairness and appropriateness of a "for cause" termination, triggered by a "warning" relating to one incident (which was still under appeal under Citi's internal process), a "formal disciplinary committee" decision, and a written "for cause" termination. The mere fact that an employee is "at will" (*i.e.*, without a set term or written guarantee of employment) does not mean that, for example, a court cannot find that the termination on a **wrongful** or **prohibited** basis, or contrary to Citi's stated practice and procedure, is without a remedy. Indeed, this very Court affirmed the confirmation of an arbitration award to a securities broker based on a "wrongful termination" claim despite the broker's "at-will" employment status. *Rosensweig*, 494 F.3d at 1335–36.[9] In a recent case, the Fifth Circuit

---

[9] Notably, the brokerage did not even raise the issue on which Citi prevailed in the district court on its appeal, nor did this Court express any concern about the Award.

23

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

**reversed** a district court holding vacating an arbitral award in favor of an employee on the theory that a contract which expressly allowed an employee to be terminated "without cause" precluded any claim for wrongful termination. *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 788–89 (5th Cir. 2015). As the Fifth Circuit held, this language was open to interpretation and could be trumped by the covenant of good faith and fair dealing; therefore, the award had to be confirmed under the proper standards. *Id.* Even if the arbitrators had "completely botched" the job of interpreting the contract, it would be irrelevant. *Id.* This case is *a fortiori*.

In this case, Gherardi and Citi submitted evidence to the arbitrators on the incident which led to the "warning," and the subsequent incident which served as the alleged violation of the "warning which supposedly justified the termination." (DE 17-18 at 12-19.) While the district court may be of the view that even a "for cause" termination based on false premises and wrongful motive is permitted for any "at-will" employee, a contrary view is, at a minimum, open to argument. Indeed,

---

*Rosensweig*, 494 F.3d at 1335–36 ("The record as a whole is clear that Rosensweig advanced the legal theory of wrongful termination to support his claims, with Morgan Stanley's use and retention of his client data from Broker's Ally an alternative theory for relief. Morgan Stanley's own pleadings belie its present intimation that it did not receive fair notice that Rosensweig was advancing the theory of wrongful termination. In its answer to his statement of claim, it argued for the dismissal of "Rosensweig's claim for 'wrongful termination' or 'breach of employment agreement'" on the grounds that he was an at-will employee. Thus, we reject Morgan Stanley's characterization of the case as turning on its handling of Rosensweig's client records; to the contrary, wrongful termination was a significant, independent issue, and one to which the back-up disks were immaterial.").

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

this was the very issue presented to the arbitrators – by both Gherardi and Citi. The legal arguments as to contract interpretation presented to the arbitrators clearly provided "arguable" support for the Award, which should not have been ignored, whether or not the district court agreed with the arbitrators' resolution of those same arguments. The district court was required to accept the panel's legal and factual conclusions – "good, bad or ugly." *Sutter*, 569 U.S. at 573; *see also Wiand*, 778 F.3d at 926 ("When reviewing an arbitration award … [the Court] may revisit neither the legal merits of the award nor the factual determinations upon which it relies."). The district court's order is simply inconsistent with the law, and cannot stand.

## C.    By Submitting Gherardi's Claims to the Arbitration Panel, Citi Waived Any Argument that the Panel Exceeded Its Powers

In addition, the Award should have been confirmed because Citi's submission agreement, (DE 17-7), in which Citi expressly agreed to arbitrate all the claims set forth in Gherardi's claim, constituted a modification of the earlier arbitration agreement which expanded the arbitration powers to include Gherardi's claims. *See Fleury*, 138 F.3d at 1342. Under FINRA's rules, Gherardi and Citi executed identical submission agreements under which they each agreed to arbitrate all the claims set forth in Gherardi's claim – which they proceeded to do.[10] These

---

[10] The parties' identical submission agreements each provided that: "The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims,

25

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

submission agreements modified the Handbook's EAP.  In *Fleury*, this Court held that a NASD (FINRA's predecessor) submission agreement (that is virtually identical to the submission agreement that Gherardi and Citi executed here) signed by a party modified an earlier arbitration agreement that the parties executed. *Fleury*, 138 F.3d at 1342; *see also Piggly Wiggly Operators' Whse., Inc. v. Piggly Wiggly Operators' Whse. Indep. Truck Drivers' Union Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) ("Arbitration is a matter of contract, but the initial contract to arbitrate may be modified by the submission agreement or grievance.") (citations omitted).[11]

The submission agreements constituted part of the record before the arbitrators and were referenced in the Award, (DE 1-1 at 2), thus the arbitrators were entitled to determine the extent to which the EAP was modified by the parties' submission agreements, and whether Citi agreed through its submission agreement that it was for the arbitrators to decide whether Gherardi had been terminated wrongfully under any of the grounds set forth in his claim and proven during the hearing.

---

counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." (DE 17-2 & 17-7.)

[11] Decisions of the Fifth Circuit prior to October 1, 1981, are binding precedent in this Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1207 (11th Cir. 1981).

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

In its order, the district court erroneously limited *Fleury* to a "holding that parties may amend their choice of arbitral forum in an arbitration agreement by subsequently executing a submission agreement." (DE 29 at 28.)  However, even an erroneous application of *Fleury* would not provide grounds for vacatur of the Award.  *S. Commc'ns Servs.*, 720 F.3d at 1360 (an "incorrect legal conclusion" is not grounds to vacate an arbitration award).  The district court simply lacked the power to make the decision it made.

Indeed, by submitting all of Gherardi's claims to the arbitration panel without objection, as evidenced by its submission agreement, Citi also waived any argument that the panel exceeded its powers by ruling on the very claims and issues submitted. As previously discussed, Citi **never argued** during the arbitration that the arbitrators would "exceed their powers" by ruling on the issues raised by Gherardi.  Instead, Citi argued on the merits that Gherardi's arguments should be rejected.   It is well established that the "failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award." *Ganton Techs. Inc. v. UAW, Local 627*, 358 F.3d 459, 462 (7th Cir. 2004).  *See also Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003) ("if a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration"); *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724

27

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

F.2d 1355, 1357 (9th Cir. 1983) ("a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result"); *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1148–49 (10th Cir. 2007) (same).   Yet this is exactly what Citi has attempted to do in this case: after unambiguously submitting all of Gherardi's claims to arbitration – and indeed requiring Gherardi to arbitrate – Citi now seeks a do-over simply because arbitration resulted in an Award it does not like.   This is precisely what the overwhelming authority of the federal courts does not permit.[12]

## II.    THE AWARD IS SUPPORTED BY SEVERAL ARGUABLE INTERPRETATIONS OF THE PERTINENT CONTRACT

The arbitrators here did not explain (nor were they required to) the basis for their Award of damages "under the claim of wrongful termination."[13]  The issues as framed in the claim and Citi's answer and submission agreement, as tried during the

---

[12] This Court's ruling in *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164 (11th Cir. 2004), is clearly distinguishable on the facts and is not at all inconsistent with *Ganton*, *Opals on Ice*, *Fortune* and *Lewis*.  The Court in *Four Seasons* held that where the party "defended before the arbitral panel on the ground that arbitration was improper," the party's *participation* in the arbitration did not constitute a waiver.  *Four Seasons*, 377 F.3d at 1166, 1171 & n.5.  Citi did not make that argument here.

[13] *Wiregrass*, 837 F.3d at 1090 ("Arbitrators usually are not required to include explanations, much less detailed ones, and they often do not."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1275 (11th Cir. 2015) ("Unless the parties stipulate otherwise, and they apparently did not here, an arbitrator is under no obligation to provide explanations with his award"); *Cat Charter*, *646* F.3d at 844, *supra*.

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

nine-day hearing, and as detailed in Gherardi's oral closing argument and closing brief, provided at least two grounds (retaliation and no just cause) upon which the arbitrators could have based their Award for "wrongful termination." In doing so, the arbitrators would be interpreting or construing the underlying contract, *not* imposing their own notions of justice on the parties or modifying the underlying contract. As such, under *Sutter*, vacatur was improper under § 10(a)(4).

The Dispute Resolution Procedures ("DRP") section of Citi's Handbook states that, "if a dispute is raised but not resolved through the DRP process, and the dispute is based on a legally protected right, any additional review and appeal must be submitted in accordance with Citi's Employment Arbitration Policy. **Arbitration is an external legal process binding upon you and Citi**." (DE 17-18 at 17 (emphasis added).)

The EAP in the Handbook also states that, "Except for the Employment Arbitration Policy, nothing contained in this Handbook, nor the Handbook itself, is a contract of employment. In addition, nothing in this Handbook constitutes a guarantee that your employment will continue for any specified period of time or end only under certain conditions. Your employment with Citi is at-will, which means it can be terminated by you or by Citi at any time, with or without notice… ." (DE 17-3 at 9.) The EAP (*i.e.*, the part of the Handbook that is a contract) also contains an anti-retaliation provision stating: "***Retaliation against employees who***

29

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

**_file a claim under this Policy, including claims regarding the validity of this Policy_** **_or any provision thereof, is expressly prohibited_**." (DE 17-3 at 11 (emphasis added).)  The district court itself recognized that this clause was incorporated in the contractual portion of the EAP.  (DE 29 at 2.)

The Handbook states in its EAP section that, "the provisions of this Handbook don't supersede any applicable law.  For example, where applicable state or local law is more generous than a particular provision in this Handbook, or in the event any provision of this Handbook is in direct conflict with applicable state or local law, then that law applies.  The EAP further states that, "[t]he arbitrator(s) shall be governed by applicable federal, state and/or local law."  (DE 17-3 at 13.)[14]

## A.    The Panel Arguably Could Have Found that Gherardi's Termination Violated the Contract's Anti-Retaliation Policy

Gherardi asserted that Citi wrongfully terminated his employment in violation of the anti-retaliation provisions of the EAP.  The evidence presented at the hearing and as recited above was sufficient to support a finding by the arbitrators that Citi fired Gherardi at least in part as retaliation for invoking his right to arbitrate under

---

[14]    The Handbook also provided that, "[e]xcept for the Employment Arbitration Policy and the 'Principles of Employment,' which each contain their own unique provisions, to meet the changing needs of both Citi and its employees, Citi reserves the right an any time to create, amend, supplement, modify or rescind, in whole or in part, any policy, procedure, benefit, or provision of this Handbook, or the Handbook itself, as it deems appropriate, with or without notice."  (DE 17-3 at 9.) Citi never claimed it did so here.

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

the EAP over the July 2015 "final warning." Thus, the arbitrators were squarely presented with an issue of textual contract interpretation in evaluating Gherardi's claim for wrongful termination under the EAP's anti-retaliation provision. Specifically, they were required to interpret and reconcile the EAP's "at-will" language and its anti-retaliation provision.

The district court concluded, however, that the language in the Handbook stating that Gherardi was an "at-will" employee foreclosed any possibility that the anti-retaliation provision in the EAP set forth a limitation on Citi's right to terminate Gherardi's employment. Leaving aside for the moment that such a legal interpretation was not the district court's job in the first place, the district court's ruling wrongly rendered meaningless the anti-retaliation provision of the EAP. The district court ignored that the arbitrators had the ability to harmonize two provisions of a contract (*i.e.*, the EAP) that were in potential conflict. On the one hand, the Handbook's contractual EAP provided that Gherardi was an "at-will" employee. On the other hand, that same contractual section prohibited retaliation against employees who file claims under the EAP.

The arbitrators, when confronted with these two potentially conflicting provisions, were within their powers to apply normal interpretative methods in construing the contract, including "the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

thereof." *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1235 (11th Cir. 2018) (citing *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000)); *Paladyne Corp. v. Weindruch*, 867 So. 2d 630, 633 (Fla. 5th Dist. Ct. App. 2004) (recognizing the "time-honored rule of construction that, where the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions") (internal citations and quotations omitted); *Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. 2nd Dist. Ct. App. 2006) ("it is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject"); *see also Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*, 898 F.3d 1087, 1093 (11th Cir. 2018) ("a [contract] should be read to give effect to all its provisions and to render them consistent with each other"). In the event of an ambiguity, "the actual intention of the parties-the governing principle of contract construction-becomes a question of fact." *Disa v. Ashley Furniture Indus., Inc.*, 131 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015). Moreover, "[a]n ambiguous term in a contract is to be construed against the drafter." *Homestead*, 760 So. 2d at 84.

The district court ignored these principles of contract interpretation and stated in a purely conclusory manner that "Gherardi's argument that the anti-retaliation

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

provision can be read as an exception to the "at-will" language is unavailing. To be sure, the Court must defer to the Panel's interpretation of the employment arbitration policy, but deference is not warranted where **the Panel's interpretation directly contradicts the plain language of the employment arbitration policy**." (DE 29 at 24 (emphasis added).) In coming to this conclusion, the district court, while paying lip-service to the narrow scope of judicial review of arbitration awards, totally nullified the anti-retaliation clause of the EAP – despite finding that it was an express *term* of the contract, (DE 29 at 2) – rather than acknowledging that, as in *Sutter*, the arbitrators were interpreting the EAP, and their Award drew its essence directly from the anti-retaliation clause that Citi itself included in the EAP. Notably, the district court also failed to address the import of the EAP's anti-retaliation clause. Instead, it treated it as if it did not exist. Just as in *White Springs*, *supra*, the arbitrators were not dispensing their own brand of industrial justice by giving effect to the anti-retaliation provision in Citi's own contract. Indeed, the arbitrators' interpretation is wholly consistent with Florida law. *See Spirit Airlines*, 899 F.3d at 1235; *Homestead*, 760 So. 2d at 84; *Paladyne*, 867 So. 2d at 633; *Kel Homes*, 933 So. 2d at 703.

Moreover, the arbitrators' presumed finding that Citi's practice of requiring "just cause" before termination (including as applied in this case) had modified the "at-will" language in the Handbook, even if wrong, would only constitute a legal

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

error that cannot be reviewed by the district court. While the district court found that the **arbitrators** exceeded their powers, the ironic truth is that it is the **district court** that arrogated to itself the power to grant a motion for summary judgment, based on its own view of the law and the facts. Power to resolve disputes of contract interpretation, however, is given by federal law to the arbitrators, not the district court, and it is not necessary to linger on the enormous legal support for the decision made by the arbitrators.

The only case cited by the district court in which an award was vacated on the ground that the arbitrators "exceeded their powers" was *Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183 (4th Cir. 2010). The analysis of the *Bishop* court, however, commands reversal here on the very different facts of this case. In *Bishop*, the arbitrators only had authority to rule upon disputes arising from the employment and termination of brokers, but the arbitrators entered an award in the brokers' favor based upon completely separate conduct, namely, an alleged improper dual representation of the brokers by firm counsel in customer arbitrations. *Bishop*, 596 F.3d at 191-92. Thus, the Fourth Circuit held that the arbitrators exceeded their powers when they "adjudicated a tort claim that fell outside of the expansive interpretation of 'arising out of employment'" that governed the scope of arbitrable issues. *Id.* at 193. Moreover, the award itself was "incoherent," *id.* at 191, making literally no sense as to either liability or damages. The arbitrators' award in *Bishop*

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

**did not** include any damages for wrongful termination (unlike here), *id.* at 192-193, which was not surprising given that the brokers "voluntarily terminated the agreements themselves," after the firm, expressly invoking the termination provision in their independent contractor agreement, closed one branch of the brokerage with the offer for the brokers to affiliate with another. *Id.* at 185-86, 191. The principles cited in *Bishop* – that errors of law or fact are irrelevant; that any interpretation of the parties' contract, whether right or wrong, could not be reviewed by the court; and, that judicial vacatur is "rare" and "exceptional," available only when the arbitrators did "not do the job they were told to do," *id.* at 185, 190 – command reversal here.

In this case, Citi purported to terminate Gherardi "for cause" under a formal (albeit flawed) process. The record supported both a finding that (1) Gherardi's termination was in retaliation for invoking his arbitration rights (which would have expressly violated the pertinent contract), and (2) the contract's "at-will" provision had been waived by Citi or modified by its conduct. Because either ruling drew its essence from the parties' contract, and because the arbitrators plainly did just the "job they were told to do" by the parties in their submission agreement and filings, the Award in this case did not exceed the arbitrators' powers.

The district court here treated this case like *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), where the Supreme Court "overturned

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

the arbitral decision there because it lacked *any* contractual basis for ordering class

procedures, not because it lacked, in Oxford's terminology, a "sufficient" one."

*Sutter*, 569 U.S. at 571.  Gherardi's dispute with Citi, however, is on all fours with

*Sutter*, *id.* at 571-72, because the EAP contained an express provision that permitted

the arbitrators to conclude that the EAP's "at-will" language was not absolute, but

rather was limited by the "anti-retaliation" provision that Citi embedded in the EAP,

and further was amended by Citi's pattern and practice of requiring just "cause" for

termination.  To quote *Sutter*:

> The contrast with this case is stark. In *Stolt–Nielsen*, the arbitrators did
> not construe the parties' contract, and did not identify any agreement
> authorizing class proceedings. So in setting aside the arbitrators'
> decision, we found not that they had misinterpreted the contract, but
> that they had abandoned their interpretive role. Here, the arbitrator did
> construe the contract (focusing, per usual, on its language), and did find
> an agreement to permit class arbitration. So to overturn his decision, we
> would have to rely on a finding that he misapprehended the parties'
> intent. But § 10(a)(4) bars that course: It permits courts to vacate an
> arbitral decision only when the arbitrator strayed from his delegated
> task of interpreting a contract, not when he performed that task poorly.
> *Stolt–Nielsen* and this case thus fall on opposite sides of the line that
> § 10(a)(4) draws to delimit judicial review of arbitral decisions.

Citi included the anti-retaliation clause in the EAP, meaning that Citi

incorporated it into the section of the Handbook that the district court and Citi itself

recognizes is a "contract of employment" – as the lower court expressly recognized

in its order.  Under Florida law, "the courts have acknowledged it is possible for …

employee documents (other than a formal contract) to create enforceable rights if

36

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

there is 'language in the employee manual expressly providing that the manual constitutes a separate employment agreement' or the parties have reached a mutual agreement to this effect." *Sleit v. Ricoh Corp.*, 2008 WL 4826113 (M.D. Fla. Nov. 4, 2008); *Walton v. Health Care Dist. of Palm Beach Cty.*, 862 So. 2d 852, 856 (Fla. 4th Dist. Ct. App. 2003).

The arbitrators could well have concluded that even if Gherardi was an "at-will employee," he could not be fired in violation of the anti-retaliation provision of the EAP. Further, the arbitrators also could have concluded that the meaning and/or scope of the contract clause was ambiguous, in light of the "at-will" and anti-retaliation language in the Handbook. Because Citi alone drafted the Handbook, the arbitrators could have construed that ambiguity against Citi to read the anti-retaliation clause of the EAP as a carve-out to the "at-will" language, so as to give it meaning as required under Florida law.

Any of these conclusions are "plausible" interpretations of the parties' agreement, given the plain language of the EAP. *Wiregrass*, 837 F.3d at 1087-88. Moreover, the arbitrators' legal conclusions are unreviewable on appeal, even if the district court or this Court thinks they were wrong, or even gravely wrong. Here, Citi wants the courts to break the promise of arbitration and have the Award reviewed without regard for the exceedingly limited grounds for judicial review of arbitration awards. Such a result (as occurred in the district court) should not be

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

permitted to stand.  Even in a world of "at-will" employment, termination for a **prohibited** reason, such as (as in this case) retaliation for exercising an admitted contractual right, is wrongful and gives rise to damages, including lost profits.

### B.   The Arbitrators Could Have Arguably Found that Citi Modified the Agreement Through Its Conduct and Required Just Cause to Terminate Gherardi

Aside from this independent basis, the district court also erred in concluding that the arbitrators were not simply resolving the issues presented to them: namely, whether Citi's ostensible reason for the termination was pretextual and baseless. Assuming the arbitrators were legally wrong, it remains only an issue of (at most) legal error.  As in *Sutter*, 569 U.S. at 573, "the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all."

Thus, the district court erred in finding that the arbitrators could not have properly concluded that Citi, by its own conduct in this case, modified the "at-will" employment relationship to one that required "cause" for his termination. In effect, the district court improperly substituted its own evaluation of the law and the evidence for that of the arbitrators.  Gherardi argued at the arbitration and in the district court that Citi did not "treat" him as an "at-will" employee, relying on Averett's testimony that firing an employee without "cause" was counter to Citi's corporate culture.  The arbitrators were permitted to interpret this argument to mean

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

that Citi modified the "at-will" language in its Handbook through a course of conduct, including through its use of the "formal disciplinary committee" to approve Averett's termination recommendation, and the multitude of lies, misrepresentations, and distortions that Averett and Vasquez made to the "disciplinary committee," in an effort to secure its approval for the termination. If Gherardi had been employed "at will," there would have been no need for the "formal disciplinary committee" at all and, at a minimum, there would have been no need for Averett and Vasquez to lie in their recitation of the events with Menendez, and in their portrayal of Gherardi as a dangerous person, in order to secure the "formal disciplinary committee's" approval for his firing.

Florida law recognizes that a party to a contract may modify that contract through a course of conduct. *St. Joe Corp.*, 875 So. 2d at 382 ("Under Florida law, the parties' subsequent conduct also can modify the terms in a contract.").

The arbitrators were well within their powers to find that Citi acted in a manner consistent with a conclusion that "cause" was necessary in order to fire Gherardi regardless of any "at-will" language to the contrary in the Handbook. Further, Citi's use of the "formal disciplinary committee" and express finding of "cause" may have persuaded the arbitrators to conclude that Citi had modified the "at-will" employment rule so as to require that Gherardi could only be terminated

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

with "cause," and to further conclude, after evaluating the detailed factual record surrounding Gherardi's termination, that no "cause" existed for his termination.

The Handbook itself contemplated that Citi could unilaterally change any of its provisions, and the arbitrators may well have concluded that the use of the "formal disciplinary committee," when coupled with the firm's corporate culture of not terminating employees without cause, constituted a modification that eliminated the "at-will" nature of Gherardi's employment relationship with the firm to one that mandated that "cause" exist.

The district court was wrong to find that the arbitrators lacked the "power" to review whether the purported "cause" found by Citi was in fact justified.  Under *Wiregrass*, Gherardi was entitled to the benefit of a "strong presumption" that the arbitrators were interpreting the parties' contract, and here the rules of contract construction comfortably allow for such a conclusion. The district court failed to note, for example, that the issues ruled upon by the arbitrators were submitted to them for decision by **both parties**, without objection from Citi.  The district court further failed to mention or apply the "strong presumption" of interpretation, and totally failed to allow for the fact that this is what the arbitrators were doing. To the contrary, the arbitrators engaged in an interpretation of the EAP, as opposed to a modification of it.  Accordingly, this Court should reverse the district court, and confirm the Award in full.

40

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

Gherardi also argued at the arbitration that he was terminated "without cause," Citi's reliance on the "Motta" and "Menendez" incidents was pretextual, and the real reason for his termination was that Citi wanted to block him from taking his clients to a competitor following the regulatory moratorium on new accounts with Citi. Gherardi relied on the *Liang*, *Agron* and *Varga* line of cases for the proposition that a FINRA arbitration necessarily modifies an "at-will" employment relationship and imposes a "cause" standard for adverse employment actions.  *See*, *e.g.*, *Agron*, 49 F.3d at 352.  Significantly, at the time of the Award (and at the time of the district court's ruling), there was no case in Florida or the Eleventh Circuit that had addressed this issue.  The arbitrators were thus charged with interpreting the law as it applied to the EAP, as presented by the parties, and they were clearly within their powers to conclude that *Liang*, *Agron* and *Varga* supported a determination that if Gherardi was fired without "cause," he was entitled to damages for wrongful termination.  This Court's holding in *Rosensweig* also supports the conclusion that where parties submit a claim of "wrongful termination" to an arbitration panel, it is not outside of the arbitrator's powers to find for an employee on such a claim even though he is considered an "at-will" employee.  494 F.3d at 1335-36.

The district court, rather than concluding that the arbitrators were interpreting these cases as they applied to the EAP, instead found more "persuasive" the rationale of *Bishop*, which (according to the district court) rejected the rule set forth in *Agron*

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

and *Liang*. (Citi did not cite *Bishop* to the arbitrators, although in its closing brief it attempted to dispute and distinguish *Agron*'s applicability. (DE 17-19 at 24.)) As discussed above, the district court's mere disagreement with a legal conclusion of the arbitrators on an issue submitted to them would be irrelevant: this is exactly the kind of judicial second-guessing of an arbitrator's legal conclusion that is impermissible under *Sutter* and the numerous other cases from this Circuit cited above circumscribing the narrow grounds on which an award may be vacated.

The arbitrators were required in evaluating Gherardi's claim to determine what law applied, and were permitted to determine that *Liang*, *Agron* and *Varga* were applicable to Gherardi and his agreement with Citi. In so doing, they were clearly interpreting the EAP in light of what they reasonably determined was applicable law. Gherardi is entitled to the *Wiregrass* "strong presumption" that this is exactly what they were doing.

The arbitrators plainly did not exceed their powers in interpreting the contract in accord with the weight of authority. Whether or not the district court agreed with those cases is simply beside the point. The arbitrators' conclusion that Citi lacked "cause" to fire Gherardi is fully supported by the arbitration record. As such, vacatur of the Award under FAA § 10(a)(4) was improper.

42

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

## CONCLUSION

WHEREFORE, this Court should reverse the district court's order and judgment vacating the part of the Award granting Gherardi damages for "wrongful termination," and should further direct that, on remand, the district court confirm the Award in full and enter judgment thereon.

Respectfully submitted,

Ethan A. Brecher
  (admitted pro hac vice)
Law Office of Ethan A. Brecher, LLC
600 Third Avenue, Second Floor
New York, NY 10016
Tel: 646-571-2440
Fax:  888-821-0246
ethan@ethanbrecherlaw.com

By: s/Jeffrey B. Crockett
Jeffrey B. Crockett, Fla. Bar No. 347401
Scott A. Hiaasen, Fla. Bar No. 103318
Coffey Burlington, P.L.
2601 South Bayshore Drive, Penthouse
Miami, FL 33133
Tel:  305-858-2900
Fax:  305-858-5261
jcrockett@coffeyburlington.com
shiaasen@coffeyburlington.com
vmontejo@coffeyburlington.com
service@coffeyburlington.com

*Counsel for Appellant*

43

*Gherardi v. Citigroup Global Markets, Inc.*, Case No. 18-13181

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,696 words, and that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

By: s/Jeffrey B. Crockett

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Mailing Information for Case No. 18-13181.

By: s/Jeffrey B. Crockett