# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## Case No. 18-13181

---

CHRISTIAN S. GHERARDI,
*Appellant/Petitioner*,

v.

CITIGROUP GLOBAL MARKETS INC.,
*Appellee/Respondent*.

---

On appeal from the United States District Court
for the Southern District of Florida (Miami Division)
Case No. 1:18-cv-20969-UU

---

### APPELLEE'S ANSWER BRIEF

Daniel Tramel Stabile
**SHUTTS & BOWEN LLP**
200 S. Biscayne Blvd., Suite 4100
Miami, Florida 33131
(t) (305) 415-9063
(e) dstabile@shutts.com

Suzanne Youmans Labrit
**SHUTTS & BOWEN LLP**
4301 W. Boy Scout Blvd., Suite 300
Tampa, Florida 33607
(t) (813) 227-8113
(e) slabrit@shutts.com

*Counsel for Appellee*

*Gherardi v. Citigroup Global Markets Inc.*
Case No. 18-13181

## CERTIFICATE OF INTERESTED PERSONS

Under Eleventh Circuit Rule 26.1-2(b), Appellee, Citigroup Global Markets Inc., believes and certifies that the Certificate of Interested Persons in Appellant, Christian S. Gherardi's Initial Brief is complete, but adds that Citigroup Inc.'s stock symbol is "C."

## CORPORATE DISCLOSURE STATEMENT

Appellee, Citigroup Global Markets Inc., a New York corporation, is a wholly-owned subsidiary of Citigroup Financial Products Inc. ("**CFPI**"), a Delaware corporation. CFPI is a wholly-owned subsidiary of Citigroup Global Markets Holdings Inc. ("**CGMHI**"), a New York corporation. CGMHI is a wholly-owned subsidiary of Citigroup Inc. ("**Citi**"), a Delaware corporation. Citi is a public company registered with the U.S. Securities and Exchange Commission. No other public corporation owns 10% or more of the stock of any of the aforementioned entities.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee believes that oral argument is unnecessary, as this case presents no novel or important issues of law and the record is clear that affirmance of the District Court's Order is warranted.

# <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

CORPORATE DISCLOSURE STATEMENT ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT .............................................i

TABLE OF CITATIONS ........................................................................................iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.................................................................................................. vii

PRELIMINARY STATEMENT ......................................................................... viii

STATEMENT OF THE ISSUE...............................................................................1

STATEMENT OF THE CASE AND OF THE FACTS ........................................2

I.  Nature of the Case and Course of Proceedings Below...................................2

II.  Statement of the Facts....................................................................................4

    A.  CGMI Terminates Mr. Gherardi's Employment after a Pattern of Inappropriate and Abusive Behavior Towards Colleagues .............4

    B.  Mr. Gherardi Asserts "Wrongful Termination" Claims Even Though the Documents Governing His Employment Relationship with CGMI Unambiguously Provide That He Was an "At Will" Employee ........................................................................5

    C.  The District Court Vacates the Panel's "Wrongful Termination" Award Under Section 10(a)(4) Because the Award Contradicts the Express "At Will" Language of the Arbitration Policy ................8

III.  Standard of Review.......................................................................................10

SUMMARY OF THE ARGUMENT ...................................................................10

ARGUMENT .........................................................................................................13

I.  Arbitrators May Interpret Agreements, but May Not Issue an Award That Contradicts an Agreement's Unambiguous Terms ..............................15

II.  CGMI Did Not "Waive" its Section 10(a)(4) Argument by Participating in the Arbitration ....................................................................17

III.  The Employment Documents Clearly and Unambiguously Provide for an "At Will" Relationship..............................................................................23

# <u>TABLE OF CONTENTS</u>
(continued)

**Page**

A.  The Employment Documents Repeatedly and Clearly Provide for an "At Will" Employment Relationship.......................................24

B.  The Anti-Retaliation Sentence Does Not Render the Employment Documents Susceptible to Interpretation because there Are Not Two "Plausible Interpretations" of the "At Will" Provisions ..........................................................................................25

C.  *Sutter* is Inapposite because, Among Other Reasons, the Arbitration Panel Conducted a "Textual Exegesis" Interpreting the Agreement ...................................................................................27

D.  Mr. Gherardi's "Construction" Arguments Are Unavailing..............28

IV.  CGMI's "Conduct" Did Not Modify the "At Will" Relationship................30

CONCLUSION .........................................................................................32

CERTIFICATE OF COMPLIANCE.......................................................32

CERTIFICATE OF SERVICE ...............................................................33

<u>**TABLE OF CITATIONS**</u>

**Page(s)**

**Cases**

*Dean Witter Reynolds, Inc. v. Fleury*,
  138 F.3d 1339 (11th Cir. 1998) ...................................................................18, 19

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,
  724 F.2d 1355 (9th Cir. 1983) .........................................................................21

*Frazier v. CitiFinancial Corp., LLC*,
  604 F.3d 1313 (11th Cir. 2010) .......................................................................19

*Ganton Techs. Inc. v. UAW, Local 627*,
  358 F.3d 459 (7th Cir. 2004) ...........................................................................21

*Gianelli Money Purchase Plan & Tr. v. ADM Inv'r Servs., Inc.*,
  146 F.3d 1309 (11th Cir. 1998) .......................................................................10

*Lewis v. Circuit City Stores, Inc.*,
  500 F.3d 1140 (10th Cir. 2007) .......................................................................21

*Local 1837, Int'l Bhd. of Elec. Workers, AFL-CIO v. Maine Pub. Serv. Co.*,
  579 F. Supp. 744 (D. Maine 1984) ..................................................................20

*Metellus v. JetBlue Airways Corp.*,
  No. 07 CV 4719 CBA RER, 2010 WL 1267777 (E.D.N.Y. Mar. 30, 2010) ......................................................................................................26

*Murphy v. Am. Home Prods. Corp.*,
  58 N.Y.2d 293 (1983) ......................................................................................14

*Opals on Ice Lingerie v. Bodylines Inc.*,
  320 F.3d 362 (2d Cir. 2003) ............................................................................21

*Original Appalachian Artworks, Inc. v. JAKKS Pac., Inc.*,
  718 F. App'x 776 (11th Cir. 2017) ..................................................................16

*Oxford Health Plans LLC v. Sutter*,
  569 U.S. 564 (2013)....................................................................................27, 28

**TABLE OF CITATIONS**
(continued)

**Page(s)**

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly
    Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*,
    611 F.2d 580 (5th Cir. 1980) .............................................................20

*Raymond James Fin. Servs. Inc. v. Bishop*,
    596 F.3d 183 (4th Cir. 2010) ..............................................................23

*Smith v. Piezo Tech. & Prof'l Adm'rs*,
    427 So. 2d 182 (Fla. 1983) ..................................................................26

*St. Joe Corp. v. McIver*,
    875 So. 2d 375 (Fla. 2004) ..................................................................31

*Walton v. Health Care Dist. of Palm Beach Cnty.*,
    862 So. 2d 852 (Fla. Dist. Ct. App. 2003) ...........................................14

*\*Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. &
    Infrastructure, Inc.*,
    837 F.3d 1083 (11th Cir. 2016) ...................................................*passim*

**Statutes**

9 U.S.C. § 1 *et seq.* ("Federal Arbitration Act" or "FAA")......................................2

9 U.S.C. § 10(a)(2).......................................................................................2, 3, 9

*\*9 U.S.C. § 10(a)(4).........................................................................passim*

28 U.S.C. § 1291 .......................................................................................... vii

28 U.S.C. § 1332(a)(1).................................................................................. vii

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation
    of Legal Texts* xxix (2012) .................................................................10

Fed. R. App. P. 32(a)(5).............................................................................32

Fed. R. App. P. 32(a)(6).............................................................................32

## <u>TABLE OF CITATIONS</u>
(continued)

**Page(s)**

Fed. R. App. P. 32(a)(7)(B)(i) ..................................................................................32

FINRA Rule 13303(a)(1) .........................................................................................17

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The United States District Court for the Southern District of Florida (the "**District Court**") possessed subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. DE 1, p. 2.

Appellant appeals from an Omnibus Order and Final Judgment, both of which the District Court entered on July 26, 2018. DE 29; DE 30. The Omnibus Order and Final Judgment disposed of all parties' claims. Appellant timely filed his Notice of Appeal on July 27, 2018. DE 31. This Court possesses jurisdiction under 28 U.S.C. § 1291 because the Omnibus Order and Final Judgment are final decisions of the District Court.

## <u>PRELIMINARY STATEMENT</u>

This brief refers to Appellant, Christian S. Gherardi, as "**Mr. Gherardi**" and to Appellee, Citigroup Global Markets Inc., as "**CGMI**."

References to Mr. Gherardi's Initial Brief appear as "**IB**." References to the July 26, 2018 Omnibus Order, which is the order under review, appear as "**Order**." The record is cited as "**DE** [docket entry], **p.** [page number]."

Unless otherwise noted, all emphasis is supplied and citations/internal punctuation are omitted from quoted case law and record materials.

## STATEMENT OF THE ISSUE

Under Section 10(a)(4) of the Federal Arbitration Act, a district court may vacate an arbitration award where an arbitration panel "exceeds its powers." An arbitration panel "exceeds its powers" where it issues an award that contradicts or modifies the express language of the parties' agreement. The issue presented in this employment dispute is whether the District Court properly vacated the arbitration award because it expressly contradicted the "at will" provisions in CGMI's arbitration policy (and other documents) by awarding Mr. Gherardi approximately $3,500,000 in damages for "wrongful termination," a cause of action that does not exist in an "at will" employment relationship.

## STATEMENT OF THE CASE AND OF THE FACTS

**I.    Nature of the Case and Course of Proceedings Below**.

On February 28, 2018, a Financial Industry Regulatory Authority ("**FINRA**") Panel of three arbitrators (the "**Panel**") issued an award in favor of Mr. Gherardi, a former "at will" employee of CGMI, granting him approximately $4,000,000 in compensatory damages and certain nonmonetary relief (the "**Award**"). DE 13-1, pp. 144-45. The Award provided that CGMI was liable to pay Mr. Gherardi $3,452,000 under his "wrongful termination" claim; $150,000 in lost quarter trailers; and $395,830.22 in deferred compensation. *Id.* at p. 144. In March 2018, CGMI and Mr. Gherardi respectively moved the District Court to vacate and confirm the Award under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "**FAA**"). DE 13; DE 1.

In its Motion to Vacate Arbitration Award, CGMI argued that vacatur of the Award was warranted for two reasons. *See* DE 13, pp. 11-19. First, the Panel "exceeded its powers" within the meaning of Section 10(a)(4) because the Panel's "wrongful termination" award contradicted the express "at will" language of the documents governing Mr. Gherardi's employment relationship with CGMI. *See id.* at pp. 17-18. Second, an arbitrator on the Panel, Robert J. Bender, displayed "evident partiality" against CGMI under Section 10(a)(2) by failing to disclose information that would lead a reasonable person to believe that a potential conflict

of interest existed—including details about Mr. Bender's acrimonious employment dispute with a former division of CGMI. *Id.* at pp. 11-17.

On July 26, 2018, the District Court (Ungaro, J.) entered its Omnibus Order and Final Judgment, through which the District Court vacated, in large part, and confirmed, in lesser part, the Award. DE 29 (the "**Order**"), p. 31; DE 30. Applying Eleventh Circuit precedent, and acknowledging that courts rarely disturb arbitration awards, the District Court concluded that the Panel "exceeded its powers" under Section 10(a)(4) because, in accepting Mr. Gherardi's "wrongful termination" claim, the Panel contradicted the express "at will" language of the relevant employment documents, including CGMI's arbitration policy. *See* Order, pp. 19-30. The District Court thus vacated that portion of the Award granting Mr. Gherardi nearly $3.5 million in damages because it was specifically tied to his impermissible "wrongful termination" claim. *Id.* at p. 31. The District Court declined to vacate the Award under the "evident partiality" framework of Section 10(a)(2). *See id.* at pp. 10-18. The District Court thus confirmed the balance of the Award, comprising over $500,000 in damages and associated nonmonetary relief. *Id.* at p. 31; DE 30.

This appeal followed. DE 31.

3

II.    **Statement of the Facts**.

A.    **CGMI Terminates Mr. Gherardi's Employment after a Pattern of Inappropriate and Abusive Behavior Towards Colleagues**.

Before the termination of his employment in December 2015, Mr. Gherardi was a Financial Advisor at the Miami office of CGMI. *See* DE 13, p. 4. Although Mr. Gherardi was a high-producing advisor (*see, e.g.*, IB, p. 3), he engaged in a pattern of inappropriate and abusive behavior towards colleagues that ultimately compelled CGMI to terminate his employment, despite his strong financial performance and talent. *See, e.g.*, DE 13-1, pp. 30, 32-33.

Mr. Gherardi's disciplinary violations began several years before his termination and continued despite multiple warnings and attempts to remedy his inappropriate behavior. *See, e.g. id.* at pp. 30, 32. In July 2010, CGMI issued Mr. Gherardi a Final Written Warning after Mr. Gherardi, in the presence of his direct supervisor, acted "aggressive towards a fellow employee" and launched "profane language, name-calling, and insults." *Id.* at p. 42. This letter advised Mr. Gherardi that his aggressive conduct violated CGMI's policies, and warned him that he may be terminated if he continued to engage "in other inappropriate behavior . . . ." *Id.*

Mr. Gherardi's aggressive tactics prompted CGMI to formally discipline him again in June 2015. *See id.* at pp. 30, 32. This time, CGMI issued Mr. Gherardi another Final Written Warning after Mr. Gherardi initiated a hostile confrontation, in the public lobby of CGMI's office building, with another Financial Advisor who

Mr. Gherardi accused of attempting to "poach" a client. *See id.* at pp. 30, 32-33, 44. The June 2015 letter again warned Mr. Gherardi that "[f]urther occurrences of [inappropriate] conduct may result in immediate termination of employment." *Id.* at p. 44.

Just a few months later, in October 2015, Mr. Gherardi provoked yet another hostile encounter with a different Financial Advisor. *See id.* at pp. 30, 33. Mr. Gherardi, again harboring concerns about client "poaching," confronted the advisor through an aggressive phone call while the advisor was in the presence of a client and the client's family. *Id.* at pp. 30, 33, 47-49. Mr. Gherardi followed that aggressive phone call with a sequence of emails in which he accused the advisor of, among other things, acting "unethically." *Id.* at p. 48.

Against this backdrop of repeated disciplinary violations, CGMI terminated Mr. Gherardi's employment effective December 10, 2015. *See id.* at pp. 30, 33.

### B.    Mr. Gherardi Asserts "Wrongful Termination" Claims Even Though the Documents Governing His Employment Relationship with CGMI Unambiguously Provide That He Was an "At Will" Employee.

On March 15, 2016, Mr. Gherardi filed, with FINRA's Office of Dispute Resolution, a Statement of Claim against CGMI and Michael R. Averett, Mr. Gherardi's former supervisor, asserting claims related to his termination. DE 13-1, pp. 9-21. Mr. Gherardi alleged that CGMI was liable for, among other claims, "wrongful termination." *Id.* at p. 20. In answering Mr. Gherardi's Statement of

5

Claim, CGMI returned to FINRA an executed "Submission Agreement," through which CGMI agreed to "submit the present matter in controversy . . . to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." *Id.* at p. 40.

Although Mr. Gherardi invoked "wrongful termination" theories, the documents governing his employment relationship with CGMI unambiguously provide that he was an "at will" employee whose employment CGMI could terminate for any reason or no reason. Three documents governed Mr. Gherardi's employment relationship with CGMI (collectively, the "**Employment Documents**"): (i) a Dual Employment Agreement; (ii) CGMI's Principles of Employment; and (iii) CGMI's Employee Handbook, which incorporates CGMI's Employment Arbitration Policy (the "**Arbitration Policy**") at issue in this appeal. *See id.* at pp. 139, 141; DE 13-2, pp. 10-20.

The Dual Employment Agreement, which Mr. Gherardi acknowledged and executed, defines CGMI's broad rights under the "employment at will" doctrine and provides: "Your employment relationship is 'at-will.' This means that your employment may be terminated at any time and for any reason or no reason, not otherwise prohibited by law, by any party." DE 13-2, p. 17. The Dual Employment Agreement also specifies that New York law governs the interpretation and enforcement of the agreement. *Id.* at p. 18. CGMI's Principles of Employment,

6

which agreement Mr. Gherardi executed contemporaneously with the Dual Employment Agreement, contains similar language outlining CGMI's broad rights under the "employment at will" doctrine. *See id.* at pp. 18, 20.

CGMI's Employee Handbook further states, under the heading "Employment at-will," that "[y]our employment with Citi is at-will, which means it can be terminated by you or Citi at any time, with or without notice . . . for no reason or for any reason not otherwise prohibited by law." DE 13-1, p. 139. CGMI's Employee Handbook incorporates the Arbitration Policy that, as Mr. Gherardi highlights, contains one sentence advising that "[r]etaliation against employees who file a claim under this Policy . . . is expressly prohibited." DE 13-2, p. 11. On the page immediately preceding the anti-retaliation provision, though, the Arbitration Policy warns, under the heading "Statement of Intent," that the provisions of the Arbitration Policy do not abrogate CGMI's broad rights under the "employment at will" doctrine:

> Employment with Citi is a voluntary relationship for no definite period of time, and nothing in this Policy or any other Citi document constitutes an express or implied contract of employment for any definite period of time.

> This Policy doesn't constitute, nor should it be construed to constitute, a waiver by Citi of its rights under the 'employment-at-will' doctrine nor does it afford an employee or former employee any rights or remedies not otherwise available under applicable law.

*Id.* at p. 10. Mr. Gherardi also acknowledged reviewing CGMI's Employee Handbook, and confirmed his understanding that his "EMPLOYMENT WITH CITI IS AT-WILL, WHICH MEANS IT CAN BE TERMINATED BY ME OR CITI AT ANYTIME [SIC], WITH OR WITHOUT NOTICE, FOR NO REASON OR ANY REASON NOT OTHERWISE PROHIBITED BY LAW." DE 13-1, p. 141 (capital letters in original).

Despite the clear guidance of these Employment Documents, on February 28, 2018, the Panel accepted Mr. Gherardi's "wrongful termination" claim, and awarded him nearly $3.5 million in compensatory damages under that theory. *Id.* at p. 144. The Award does not memorialize the reasons for the Panel's "wrongful termination" decision. *Id.*

## C. The District Court Vacates the Panel's "Wrongful Termination" Award Under Section 10(a)(4) Because the Award Contradicts the Express "At Will" Language of the Arbitration Policy.

In March 2018, CGMI and Mr. Gherardi respectively moved the District Court to vacate and confirm the Award under the FAA. DE 13; DE 1. After the Panel issued its Award, CGMI discovered that Arbitrator Bender—who CGMI sought to remove from the Panel during the arbitration, based on a disclosed potential conflict (*see, e.g.*, DE 13-1, pp. 77-78)—failed to disclose several significant matters bearing on his ability to impartially serve on the Panel. *See* DE 13, pp. 5-11. Arbitrator Bender failed to disclose, among other conflict

8

information, the true circumstances of his departure from Salomon Smith Barney Inc. ("**Smith Barney**"), a former division of CGMI, including the fact that (i) he delivered a draft judicial complaint to Smith Barney's in-house attorneys asserting claims similar to Mr. Gherardi's claims; (ii) he defaulted on a $37,000 loan obligation to CGMI; and (iii) he participated in a class action lawsuit against CGMI alleging claims under the Fair Labor Standards Act. *Id.* at pp. 9-10. The District Court held that Arbitrator Bender's non-disclosures were insufficient to warrant vacatur of the Award under the "evident partiality" framework of Section 10(a)(2). *See* Order, pp. 10-18.

The District Court, however, vacated the Panel's "wrongful termination" award on the ground that, in granting relief under that claim, the Panel "exceeded its powers" within the meaning of Section 10(a)(4). *See id.* at pp. 19-31. The "at will" language of the Arbitration Policy, reasoned the District Court, is unambiguous, and thus the Panel's "interpretation" of the anti-retaliation provision as an "exception" to CGMI's rights under the "employment at will" doctrine "directly contradict[ed] the plain language of the employment arbitration policy." *Id.* at p. 24. The District Court also rejected each of Mr. Gherardi's subsidiary theories for confirming the Panel's "wrongful termination" award that he rehashes on appeal: (i) that the Panel could imply a "for cause" termination requirement into the Employment Documents; (ii) that, by executing the Submission Agreement,

CGMI "waived" any challenges to a potential "wrongful termination" award; and (iii) that, because CGMI purportedly did not treat Mr. Gherardi like an "at will" employee, CGMI could terminate Mr. Gherardi's employment only for cause. *See id.* at pp. 24-29.

## III. Standard of Review.

Mr. Gherardi incorrectly asserts that the Eleventh Circuit "reviews *de novo* a district court's vacatur of an arbitration award." IB, p. 11. In fact, this Court applies a hybrid standard of review: *de novo* for legal conclusions, and "clear error" for factual findings. *Gianelli Money Purchase Plan & Tr. v. ADM Inv'r Servs., Inc.*, 146 F.3d 1309, 1311 (11th Cir. 1998). Under either standard, the Order should be affirmed.

## SUMMARY OF THE ARGUMENT

"A system of democratically adopted laws cannot endure—it makes no sense—without the belief that words convey discernible meanings and without the commitment of legal arbiters to abide by those meanings." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* xxix (2012). Like judges, arbitrators are empowered to interpret agreements, but they are not free to disregard an agreement's plain and unambiguous language. Although judicial review of arbitral awards is limited, an award must be vacated if an arbitrator

ignores the text of an agreement and awards relief in direct contravention of the agreement. That is what happened here.

The terms of Mr. Gherardi's employment are memorialized in the Employment Documents, all of which plainly state—over and over again—that Mr. Gherardi's employment was "at will" and could be terminated for any reason or no reason at all. Consistent with basic principles of textual interpretation and applicable precedent of this Court, the District Court correctly vacated the Panel's award of nearly $3.5 million dollars as "compensatory damages" for "wrongful termination." The award directly contradicts the Employment Documents pursuant to which Mr. Gherardi agreed that his employment could be terminated for any or no reason. Simply put, the Panel exceeded its authority by awarding damages for "wrongful termination" because no claim for "wrongful termination" exists in the "at will" context.

In his futile quest to avoid the plain meaning of the Employment Documents, Mr. Gherardi first argues for an artificially narrow level of deference that would altogether foreclose judicial review of any arbitral award, regardless of the terms of the underlying agreement. In like manner, Mr. Gherardi contends that, simply by executing the FINRA Submission Agreement or participating in the arbitration, CGMI "waived" any argument that the Panel exceeded its authority. According to Mr. Gherardi, the FINRA Submission Agreement "modified" the

Employment Documents such that the Panel could adjudicate any claim, even one that is directly negated by the parties' agreement. Accepting this interpretation would require this Court to impermissibly read the Submission Agreement in a manner that is unsupported by its text and purpose. Beyond that, this interpretation would wholly vitiate the provisions of Section 10(a)(4) by requiring the judiciary to conclusively determine that an arbitral panel inherently acts within its powers to decide any matter and award any relief, even where the panel does so in direct contravention of the parties' agreement.

Mr. Gherardi lastly argues that the "at will" relationship was modified, either by a single sentence in the Employee Handbook prohibiting retaliation and/or by CGMI's "conduct." Both arguments are meritless. The first contention is negated by the text of the Handbook itself, which (i) expressly states that the anti-retaliation policy is not "a waiver by Citi of its rights under the 'employment-at-will' doctrine" and (ii) contains Mr. Gherardi's signed acknowledgement that his employment was "at will." The second contention is rooted in the speculative notion that termination of an employee without cause is somehow repugnant to CGMI's "culture," notwithstanding multiple writings confirming the parties' express mutual agreement that CGMI could terminate Mr. Gherardi's employment with or without cause.

The District Court carefully and thoroughly considered and rejected Mr. Gherardi's arguments directed to the Panel award of compensatory damages for "wrongful termination." Mr. Gherardi has shown (and can show) no error in the District Court's decision because none occurred. The judgment should be affirmed.

## ARGUMENT

The District Court properly determined that the Panel "exceeded its powers" under Section 10(a)(4) of the FAA. Mr. Gherardi argues the District Court was "far less deferential than the law requires," vacating the Award simply "based on its disagreement" with the Panel. IB, p. 20. However, in reaching its determination, the District Court "considered the parties' arguments thoroughly and with caution," precisely because "arbitrators generally are due deference." Order, p. 20.

In the Eleventh Circuit, the law is clear that arbitrators are entitled to deference, but it is equally clear that this deference is not unfettered. In particular, "an arbitrator may not issue an award that **contradicts the express language** of the agreement" between the parties. *Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. & Infrastructure, Inc.*, 837 F.3d 1083, 1088 (11th Cir. 2016). As the District Court correctly reasoned, the Panel violated this standard when it found that CGMI "wrongfully terminated" Mr. Gherardi because: (i) the agreements governing the relationship between CGMI and Mr. Gherardi unambiguously

provide that Mr. Gherardi's employment is "at will" and (ii) under applicable law,[1] there is no cause of action for "wrongful termination" in an "at will" relationship. The Panel's Award thus contradicts the parties' agreements because it nullifies the several "at will" provisions, modifying the employment relationship to one in which Mr. Gherardi could be terminated by CGMI only for "just cause."

Mr. Gherardi structures the Argument of his appellate brief in two parts. Part I is titled "the arbitrators did not exceed their powers in determining issues submitted to them by the parties" (IB, pp. 14-28); Part II is titled "the award is supported by several arguable interpretations of the pertinent contract" (IB, pp. 28-42). Mr. Gherardi appears to present four discrete points in support of his view that the District Court's partial vacatur of the Award should be reversed:

> (i)    a court's review of an arbitration award should be "narrow" (pp. 14-17, 19-23);

> (ii)   by arbitrating this dispute with Mr. Gherardi, CGMI "waived" its argument that the Panel "exceeded its powers" under Section 10(a)(4) (pp. 25-28, 18-19);

> (iii)  the "at will" relationship was modified by a sentence in the Employee Handbook prohibiting retaliation (pp. 30-38); and

---

[1] As the District Court correctly acknowledged (Order, p. 22 n.9), there is some uncertainty regarding whether New York or Florida law applies, but the result is the same: in either jurisdiction an "at will" employee can be terminated for any reason or no reason. *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 300-01 (1983); *Walton v. Health Care Dist. of Palm Beach Cnty.*, 862 So. 2d 852, 855 (Fla. Dist. Ct. App. 2003).

(iv)   the "at will" relationship was modified through CGMI's conduct (pp. 38-43, 23-25).

These points are addressed below *seriatim*. With respect to Mr. Gherardi's first point, the parties and the District Court largely agree regarding the standard of judicial review applicable to vacatur of arbitration awards. The remaining three points raised by Mr. Gherardi were squarely addressed and rejected by the District Court. They likewise should be rejected here.

## I.   Arbitrators May Interpret Agreements, but May Not Issue an Award That Contradicts an Agreement's Unambiguous Terms.

Section 10(a)(4) of the FAA provides that a court "may make an order vacating [an arbitration] award . . . **where the arbitrators exceeded their powers,** or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

As the District Court correctly explained, this Court has clarified that "determining whether an arbitrator has exceeded his powers under § 10(a)(4) is guided by two principles." Order, p. 19. First, courts should defer to an arbitrator's "interpretation" of an agreement between the parties. *Wiregrass Metal Trades Council AFL-CIO*, 837 F.3d at 1087. Second, "[a]n arbitrator may not ignore the plain language of the contract." *Id.* at 1088. "That means an arbitrator may not issue an award that **contradicts the express language of the agreement**. . . . It also means an arbitrator **may not modify clear and unambiguous contract**

**terms**." *Id.*; *see also Original Appalachian Artworks, Inc. v. JAKKS Pac., Inc.*, 718 F. App'x 776, 784 (11th Cir. 2017) ("Applying these two principles, an arbitrator . . . exceeds his authority when he modifies the contract's clear and unambiguous terms."). Mr. Gherardi stresses throughout the opening section of his Argument that a court's review of arbitral awards should be "narrow." IB, pp. 14-16. CGMI has never disputed this point. Ultimately, Mr. Gherardi cites and extensively quotes *Wiregrass*, conceding—as he must—the limits of the "deferential" review: "an arbitrator 'may not issue an award that contradicts the express language of the agreement.'" *Id.* at p. 16 (quoting *Wiregrass Metal Trades Council AFL-CIO*, 837 F.3d at 1088). This is the exact language the District Court quoted in reciting the standard applicable to judicial determination of whether the Panel "exceeded its powers" under Section 10(a)(4), and it is interwoven throughout the District Court's thorough analysis. Order, p. 19.

Notably, the Panel provided "essentially no reasoning" for why it granted Mr. Gherardi's "wrongful termination" claim. *Id.* at p. 29; DE 13-1, p. 144. While Mr. Gherardi is correct that a FINRA panel generally is not required to provide any reasoning, he attempts to utilize this fact to insulate the Award from any meaningful judicial review, stating that "if the Award **could conceivably be viewed** as addressing the governing contract, the Award will be confirmed." IB, p. 19. However, as the District Court recognized and this Court has held, an award

must be construed as a permissible "interpretation" only if "one can **plausibly** read the award either way"—*i.e.*, as an impermissible modification/contradiction **or** a permissible interpretation. Order, p. 29 (quoting *Original Appalachian Artworks, Inc.*, 718 F. App'x at 784 (emphasis added by the District Court)).

Mr. Gherardi frames his position by stating that it is "**possible**" or "**conceivable**" that the Panel might have based its "wrongful termination" decision on one or more of the arguments he advanced before the District Court, and that the District Court's mere disagreement with these arguments is insufficient to vacate the Award. However, the District Court ultimately determined that the Award could not plausibly be read as "interpreting" the Employment Documents because "the **only interpretation** of the [A]ward open to the Court is that the Panel rendered an [A]ward in direct contradiction of the plain termination 'at-will' language in the Employment Documents." *Id.*

## II.    CGMI Did Not "Waive" its Section 10(a)(4) Argument by Participating in the Arbitration.

Mr. Gherardi's first substantive argument is that CGMI "waived" its Section 10(a)(4) argument simply because CGMI signed and filed the template FINRA Submission Agreement. IB, pp. 25-27. The execution of the Submission Agreement is a requirement to participate in a FINRA arbitration proceeding (FINRA Rule 13303(a)(1)); the Submission Agreement provides that the parties "hereby submit the present matter in controversy, as set forth in the attached

statement of claim . . . to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." DE 13-1, p. 40. Mr. Gherardi asserts that the Submission Agreement "constituted a modification of" the Employment Documents that "expanded the arbitration powers to include" any claim asserted in the Arbitration. IB, p. 25. The logical implication of this argument is that there can never be a Section 10(a)(4) judicial review of a FINRA arbitration award because an arbitration panel inherently acts within its powers to decide any matter submitted, even if the decision directly contradicts an agreement between the parties. This expansive argument finds no support in the law, and the District Court considered and properly rejected it. Mr. Gherardi relies primarily on *Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339 (11th Cir. 1998), but his reliance is misplaced. In *Fleury*, a brokerage firm and its customer agreed to arbitrate controversies in certain specified forums. *Id.* at 1340. Subsequently, through the execution and filing of submission agreements, both parties consented to arbitrate before the National Association of Securities Dealers ("**NASD**"), a forum not among those specified in the arbitration agreement. *Id.* After the NASD Director ruled that certain of the petitioners' claims were not time-barred, the respondent filed an action in the U.S. District Court for the Southern District of Florida, arguing that the petitioners' claims were ineligible for arbitration before NASD. *Id.* at 1341.

This Court ruled that while the parties initially agreed to arbitrate elsewhere, "[i]n the Submission Agreement, the parties agreed to **submit their claims to the NASD**, thereby modifying the earlier Account and Customer Agreements." *Id.* at 1342. As the District Court determined, the Eleventh Circuit thus held in *Fleury* "that parties may amend their **choice of arbitral forum** in an arbitration agreement by subsequently executing a submission agreement." Order, p. 28. *Fleury* is inapposite because CGMI has not challenged that FINRA was the proper forum for the Arbitration. Contrary to Mr. Gherardi's suggestion, *Fleury* does not stand for the much broader proposition that once parties have agreed to arbitrate in a particular forum, the arbitration panel has limitless power to rule in any way on any matter presented in the arbitration pleadings. The very purpose of Section 10(a)(4) is to constrain—albeit to a narrow degree—the powers of arbitrators within the context of an agreed-upon arbitration.[2]

---

[2] Similarly, Mr. Gherardi cites *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313 (11th Cir. 2010) for the proposition that "where the issues decided were submitted to the arbitrators by the parties as issues to be arbitrated . . . the arbitrators necessarily did not exceed their powers." IB, p. 18. That is a blatant misreading of the decision. In *Frazier*, a party's Section 10(a)(4) argument was that an arbitrator "exceeded his powers" specifically because a particular issue was not submitted to the arbitrator;  this Court  rejected that argument because the other party "expressly requested such relief in its pre-hearing submissions to the arbitrator." *Frazier*, 604 F.3d at 1321. CGMI does not argue that "wrongful termination" was not properly submitted to the Panel.

The other main authority Mr. Gherardi cites on this issue is *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580 (5th Cir. 1980), a collective bargaining matter where an employer challenged an arbitrator's authority to adjudicate a dispute with its employee after the arbitration was completed and reinstatement of the employee was ordered. *Piggly Wiggly* stands for the commonsense principle that parties who have participated in arbitration proceedings without objection cannot subsequently argue that they need not be bound by the arbitral determinations because the entire matter should never have been submitted to arbitration in the first instance. As articulated succinctly by another court, "to the extent that *Piggly Wiggly* can be read as recognizing that a submission agreement may permit an arbitrator to disregard or modify provisions of the collective bargaining agreement, the only authority supporting such a view relates to the modification of those provisions . . . **relat[ing] to arbitrability** or matters of arbitral procedure." *Local 1837, Int'l Bhd. of Elec. Workers, AFL-CIO v. Maine Pub. Serv. Co.*, 579 F. Supp. 744, 751 (D. Maine 1984).

Unlike in *Piggly Wiggly*, CGMI has never challenged the Panel's authority to decide the dispute. Instead, CGMI argues that by predicating part of its Award on "wrongful termination"—a claim that does not exist under applicable law in view of the "at will" nature of the employment relationship—the Panel issued a

decision that impermissibly "contradicts the express language of the agreement," and that portion of the Award should be vacated.[3]

Mr. Gherardi also asserts (without significant analysis) that CGMI "waived" "any argument that the panel exceeded its powers" because CGMI "never argued during the arbitration that the arbitrators would 'exceed their powers'" under Section 10(a)(4) of the FAA. IB, p. 27. In support, Mr. Gherardi cites a case in which the Seventh Circuit reasoned that a **substantive merits argument** could not be raised for the first time when appealing the arbitrator's decision in a court of law. *Ganton Techs. Inc. v. UAW, Local 627*, 358 F.3d 459 (7th Cir. 2004). But, as Mr. Gherardi acknowledges, at the Arbitration CGMI argued at length "**on the merits** that Gherardi's arguments should be rejected." IB, p. 27; *see also, e.g.*, DE 13-1, pp. 34-35 (CGMI's Response to Mr. Gherardi's Statement of Claim). Mr. Gherardi cites no authority for the proposition that CGMI was required to argue its "appellate" position that the Panel is not permitted to run afoul of the contours of its authority under the FAA. His argument is akin to arguing that a party cannot

---

[3] Mr. Gherardi cites (IB, pp. 27-28) three cases in support of his "waiver" argument that similarly pertain to parties who challenge the very arbitrability of a dispute after they have participated in the arbitration. *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362 (2d Cir. 2003); *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355 (9th Cir. 1983); *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140 (10th Cir. 2007). These cases are inapposite for the reasons discussed above.

appeal a district court decision unless it advises the District Court that it may not "abuse its discretion" with respect to factual findings.

Finally, elsewhere in the brief, Mr. Gherardi briefly advances an even more extreme variation of his "submission agreement" argument: simply participating in a FINRA arbitration "necessarily modifies an 'at-will' employment relationship and imposes a 'cause' standard for adverse employment actions." IB, p. 41. Mr. Gherardi cites the *Argon* line of out-of-circuit cases predicated on the interpretation of collective bargaining agreements in the arbitration context. *Id.* As the District Court observed, this Court recognizes the unique nature of the collective bargaining context: "when interpreting collective bargaining agreements 'absent some express restriction upon the arbitrator's authority, the arbitrator is not limited to the bare words of the agreement and common law rules for the interpretation of private contracts.'" Order, p. 27 (emphasis omitted) (quoting *Loveless v. E. Air Lines, Inc.*, 681 F.2d 1272, 1280 (11th Cir. 1982)). For this reason, "[t]he same considerations do not apply here in the case of private employment agreements between a financial advisor and a financial institution." *Id.* And the considerations are particularly inapplicable here because there are express "at will" provisions in the Employment Documents. DE 13-1, pp. 139, 141; DE 13-2, pp. 10-20. Moreover, even setting aside these distinctions from the *Argon* line, this Court has not adopted the *Argon* analysis, which is at odds with the better-reasoned and more

recent Fourth Circuit case of *Raymond James Fin. Servs. Inc. v. Bishop*, 596 F.3d 183 (4th Cir. 2010).

## III. The Employment Documents Clearly and Unambiguously Provide for an "At Will" Relationship.

As noted earlier, in the Eleventh Circuit, an arbitration award should be vacated when it "modifies" or "contradicts" an agreement between the parties, rather than simply "interpreting" the agreement. "To determine whether the arbitrator engaged in interpretation, as opposed to modification, we begin by looking at the relevant language . . . and asking, as a threshold matter, **whether the language is open to interpretation**." *Wiregrass Metal Trades Council AFL-CIO*, 837 F.3d at 1088.

On appeal, Mr. Gherardi argues that the "at will" language is "open to interpretation" because the Panel theoretically might have found that a sentence in the Employee Handbook prohibiting CGMI from "retaliating" against employees modified the "at will" nature of the employment relationship, and therefore the Panel may have engaged in permissible "interpretation." The District Court considered and rejected this argument because the Employment Documents clearly and unambiguously provide for an "at will" relationship, and the Panel's decision directly contradicts the plain language of those agreements. *See* Order, pp. 19-30.

23

### A.    The Employment Documents Repeatedly and Clearly Provide for an "At Will" Employment Relationship.

As the District Court determined, three pertinent documents governed the employment relationship (*i.e.*, the "**Employment Documents**") between CGMI and Mr. Gherardi: the Dual Employment Agreement, the Principles of Employment, and the Employee Handbook (which incorporates the Arbitration Policy). Individually and collectively, these documents clearly and unambiguously provide that Mr. Gherardi's employment with CGMI was "at will."

As an initial matter, the Dual Employment Agreement (Section 2) provides that Mr. Gherardi's "employment relationship is 'at-will'" and that his employment "may be terminated at any time and for any reason or no reason." DE 13-2, p. 17. Similarly, the Principles of Employment, which discuss the disputes/arbitration procedure, specifically provide that "the employment relationship is 'at-will' which affords either party the right to terminate the relationship at any time for no reason or any reason not otherwise prohibited by applicable law." *Id.* at p. 20. Likewise, the applicable Handbook contains a prominent section titled "Employment at-will," which states: "Your employment with Citi is at-will, which means it can be terminated by you or Citi at any time, with or without notice. . . ." DE 13-1, p. 139. Finally, Mr. Gherardi's signed acknowledgement of the Handbook itself confirms his understanding of his "at will" employment status: "I UNDERSTAND THAT MY EMPLOYMENT WITH CITI IS AT-WILL, WHICH

24

MEANS IT CAN BE TERMINATED BY ME OR CITI AT ANYTIME [SIC],

WITH OR WITHOUT NOTICE, FOR NO REASON OR ANY REASON NOT

OTHERWISE PROHIBITED BY LAW." *Id.* at p. 141 (capital letters in original).

**B.     The Anti-Retaliation Sentence Does Not Render the Employment Documents Susceptible to Interpretation because there Are Not Two "Plausible Interpretations" of the "At Will" Provisions**.

The Arbitration Policy within the Handbook also contains a sentence regarding retaliation: "Retaliation against employees who file a claim under this Policy, including claims regarding the validity of this Policy or any provisions thereof, is expressly prohibited." DE 13-2, p. 11. Mr. Gherardi seizes upon this sentence, attempting to conjure ambiguity when none exists by arguing that the sentence "conflicts" with or somehow "modifies" the "at will" relationship. But language is susceptible to interpretation only "when it is sufficiently ambiguous on its face . . . or [w]hen there are two plausible interpretations of an agreement . . . ." *Wiregrass Metal Trades Council AFL-CIO,* 837 F.3d at 1088. The District Court correctly held that there is no facial ambiguity and "[t]here are not two plausible interpretations of the employment arbitration policy and it is therefore not susceptible to interpretation." Order, p. 24.

In reaching its determination, the District Court emphasized that "the plain language of the Employment Documents forecloses Gherardi's arguments." *Id.* at p. 23. For example, although Mr. Gherardi accurately quotes the sentence in the

Arbitration Policy of the Handbook indicating that retaliation against employees for certain reasons is forbidden, the immediately preceding page states: "**This Policy doesn't constitute**, **nor should it be construed to constitute, a waiver by Citi of its rights under the** '**employment-at-will' doctrine** nor does it afford an employee or former employee any rights or remedies not otherwise available **under applicable law**." DE 13-2, p. 10.[4] Moreover, the Handbook acknowledgement Mr. Gherardi signed expressly states that "[n]othing in this Handbook constitutes a guarantee that my employment will continue for any specified period of time" and (as noted above) that "my employment with Citi is at-will." DE 13-1, p. 141.

Of course, the Panel never indicated that it found CGMI liable for "wrongful termination" based on the "anti-retaliation" language, and Mr. Gherardi's view that it **might have** been the basis for the Award is purely speculative. In any event, the District Court properly determined that, while courts generally "must defer to the Panel's interpretation of the employment arbitration policy," deference is not

---

[4] Significantly, Mr. Gherardi's attempt to anchor his "wrongful termination" theory to the anti-retaliation provision fails for an additional reason: neither New York nor Florida law (*see* n.1, above) recognizes a claim for "wrongful termination" when an employer terminates an employee for a "retaliatory" reason. *See, e.g.*, *Metellus v. JetBlue Airways Corp.*, No. 07 CV 4719 CBA RER, 2010 WL 1267777, at *4 (E.D.N.Y. Mar. 30, 2010) (collecting New York cases); *Smith v. Piezo Tech. & Prof'l Adm'rs*, 427 So. 2d 182, 184 (Fla. 1983).

warranted where, as here, "the Panel's interpretation directly contradicts the plain language of the employment arbitration policy." Order, p. 24.

### C. *Sutter* is Inapposite because, Among Other Reasons, the Arbitration Panel Conducted a "Textual Exegesis" Interpreting the Agreement.

In support of his argument that the Employment Documents were ambiguous and susceptible to interpretation, Mr. Gherardi cites *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568-69 (2013) (*e.g.*, IB, p. 29), at one point stating the two cases are "on all fours" (IB, p. 36). However, *Sutter* is entirely consistent with the subsequent Eleventh Circuit authority cited throughout this brief and the District Court's determination that the Panel ran afoul of Section 10(a)(4) of the FAA.

In *Sutter*, an arbitrator found, in two separate rulings, that a contract between the parties permitted class-wide arbitration. *Sutter*, 569 U.S. at 566-68. The district court denied a motion to vacate the decision and the Third Circuit affirmed. *Id.* at 568. The Supreme Court also affirmed, reasoning that an arbitrator's award based on an "interpretation" of an agreement should not be vacated. *Id.* at 573.

This principle is not in dispute; however, the underlying factual circumstances of *Sutter* are distinct from this matter and render it inapposite. As Justice Kagan explained, the arbitrator's decisions in *Sutter* were "through and through, interpretations of the parties' agreement." *Id.* at 570. For example, the

first arbitral decision expressly recited the "question of construction," in which the arbitrator "focused on the arbitration clause's text, analyzing . . . the scope of both what it barred from court and what it sent to arbitration." *Id.* The arbitrator also concluded "based on that textual exegesis" that a clause expressed "the parties' intent that class action arbitration can be maintained." *Id.*

By contrast, in this matter, the Award simply states (in pertinent part): "Respondent Citi is liable for and shall pay to Claimant the sum of $3,452,000.00 in compensatory damages under the claim of wrongful termination." DE 13-1, p. 144. The Panel performed no "textual exegesis." More to the point, as the District Court found, the Employment Documents **could not plausibly** be interpreted as creating anything other than an "at will" employment relationship. *See, e.g.*, Order, p. 24.

### D.    Mr. Gherardi's "Construction" Arguments Are Unavailing.

Mr. Gherardi also states that the arbitrators were "within their powers to apply normal interpretative methods in construing the contract" (IB, p. 31), but his application of that concept is flawed. As this Court has clarified, arbitrators **are not** permitted to "construe" an agreement between the parties in a manner that "contradicts the express language of the agreement." *Wiregrass Metal Trades Council AFL-CIO*, 837 F.3d at 1088.

The first "interpretative method" mentioned by Mr. Gherardi is "'the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof.'" IB, pp. 31-32 (citing several authorities for this general proposition). But there is nothing "unharmonious" about a Handbook stressing an internal policy against retaliation while, at the same time, providing that even a termination in violation of an internal policy does not give rise to an employee's entitlement to employment. This is the essence of the "at will" relationship, which is repeatedly emphasized throughout the Employment Documents: the employee may be terminated for "**any reason**" or no reason at all. *See* DE 13-1, pp. 139, 144; DE 13-2, pp. 10-20.  For the avoidance of any doubt, the Handbook specifically stresses that nothing – **including the anti-retaliation sentence** – is intended to modify the many "at will" provisions. DE 13-2, p. 10.

Mr. Gherardi also alludes to a second "interpretative method," stating that the District Court's Order "totally nullified" the anti-retaliation sentence. He accuses the District Court of "paying lip-service" to the "narrow scope of judicial review" and speculates, without providing any rationale or citation, that the Award "drew its essence directly from the anti-retaliation clause." IB, p. 33. However, Mr. Gherardi's "interpretation" of the anti-retaliation sentence is not plausible because **his** proposed meaning would nullify the clear provision stating that nothing in the

Arbitration Policy "constitute[s], nor should it be construed to constitute, a waiver by Citi of its rights under the 'employment-at-will' doctrine." DE 13-2, p. 10.

## IV.    CGMI's "Conduct" Did Not Modify the "At Will" Relationship.

Finally, Mr. Gherardi argues that the Panel "could have arguably found" that CGMI "modified the 'at-will' employment relationship to one that required 'cause' for his termination" because "Citi did not 'treat' him as an 'at-will' employee." IB, pp. 38-39. Mr. Gherardi fails to cite the record on this point, referring only to his argument below that a CGMI individual testified at the Arbitration that "firing an employee without 'cause' was counter to Citi's corporate culture." *Id.* at p. 38. As the District Court properly recognized, the same individual also testified that "[m]y understanding is that I don't need cause." Order, p. 29. More importantly, Mr. Gherardi provided the District Court—and provides this Court—"**no authority** for the proposition that if Citi did not treat Gherardi as an 'at-will' employee, then he could only be terminated for 'just-cause.'" *Id.*

Although not raised before the District Court, Mr. Gherardi also argues that "[t]he Handbook itself contemplated that Citi could unilaterally change any of its provisions" (IB, p. 40), apparently suggesting that CGMI modified the "at will" relationship to one in which employees could be terminated only for "just cause." Mr. Gherardi provides no record cite for this point, but he appears to be referring to language from the Handbook providing that "Citi reserves the right at any time to

create, amend, supplement, modify or rescind in whole or in part any policy, procedure. . . ." DE 13-1, p. 139. However, the first clause of that sentence is "Except for the Employment Arbitration Policy and the 'Principles of Employment' . . . ." *Id.* As those documents contain "at will" provisions (*e.g.*, DE 13-2, pp. 10, 20), CGMI would not be permitted to unilaterally modify them.

Mr. Gherardi cites a single, inapposite case for the general proposition that "[u]nder Florida law, the parties' subsequent conduct also can modify the terms in a contract." IB, p. 39. However, he omits the next three sentences of that opinion, which provide that a party "cannot modify a contract unilaterally" because "[a]ll the parties whose rights or responsibilities the modification affects must consent" and also that the modification "must be supported by proper consideration." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 379 (Fla. 2004). In this regard, Mr. Gherardi's sole authority refutes, rather than supports, his position that the Employment Documents could have been unilaterally modified by CGMI.

## CONCLUSION

For each and all of the foregoing reasons, the judgment should be affirmed.

Respectfully submitted,

**SHUTTS & BOWEN LLP**
*s/ Daniel Tramel Stabile*
Daniel Tramel Stabile
200 S. Biscayne Blvd., Suite 4100
Miami, Florida 33131
(t) (305) 415-9063
(e) dstabile@shutts.com

Suzanne Youmans Labrit
4301 W. Boy Scout Blvd., Suite 300
Tampa, Florida 33607
(t) (813) 229-8900
(e) slabrit@shutts.com
*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Answer Brief complies with the type-volume limitation of Rule 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure because, excluding the parts of the document exempted by Eleventh Circuit Rule 32-4, this brief contains 7,129 words. This Answer Brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because the document has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.

*s/ Daniel Tramel Stabile*
Daniel Tramel Stabile

**CERTIFICATE OF SERVICE**

I certify that on December 27, 2018 a true and correct copy of the foregoing

Answer Brief was electronically filed with the Clerk of the Court using the

CM/ECF system causing the Answer Brief to be electronically served upon:

Scott A. Hiaasen, Esq.
Florida Bar No. 103318
shiaasen@coffeyburlington.com
Jeffrey B. Crockett, Esq.
Florida Bar No. 347401
jcrockett@coffeyburlington.com
lperez@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 S. Bayshore Dr.,
Penthouse One
Miami, Florida 33133

Ethan A. Brecher, Esq.
ethan@ethanbrecherlaw.com
**LAW OFFICE OF ETHAN A. BRECHER, LLC**
600 Third Ave., 2nd Floor
New York, New York 10016

*s/ Daniel Tramel Stabile*
Daniel Tramel Stabile

MIADOCS 17465489 1

33